"Pony" DUKE, Appellant (Defendant below),

v.

Margaret HOUSEN, Appellee (Plaintiff below).

No. 4811.

Supreme Court of Wyoming.

Jan. 12, 1979.

Rehearing Denied March 2, 1979.
See 590 P.2d 1340.

Robert A. Gish, Basin, and R. R. Bostwick, Casper, signed the briefs. R. R. Bostwick, Casper, appeared in oral argument on behalf of appellant.

G. L. Spence, Casper, signed the briefs and appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and GUTHRIE,* McCLINTOCK and THOMAS, JJ., and ARMSTRONG, D. J., Retired.

RAPER, Chief Justice.

In the appeal now before the court, appellant-defendant challenges the jury verdict and district court judgment entered against him awarding to appellee-plaintiff, based upon defendant's alleged grossly negligent infection of plaintiff with venereal disease, compensatory and punitive damages in the sum of $1,300,000. Through this appellate challenge, defendant raises the following questions:

---

* At the time of oral argument, while this case was under advisement and at the time a decision was reached, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977. Rooney, J., did not participate.

1. Is the action barred by a statute of limitations?
2. Are the damages excessive?
3. Is the defense of assumption of risk or other defense a bar to plaintiff's recovery as a matter of law?
4. Was there reversible error in the admission of the testimony of Janet Woodenlegs?
5. Were the instructions on punitive damages improper?
6. Was there plain and fundamental error?

For the reasons stated in detail herein, we shall reverse on the ground that the action is barred by the statute of limitations and not consider the other issues.

In early *April, 1970*, plaintiff was living, working, and going to college part-time in the Washington, D.C. area. On *April 4* of that year she was introduced by her brother to defendant; and on the same night and early morning of April 5, following dinner and dancing plus moderate drinking, engaged in sexual intercourse with defendant in the front seat of his pickup truck. On April 8th, at least partially in response to defendant's sudden and convincing professions of love and desire to marry, plaintiff met defendant at the LaGuardia airport in New York and subsequently traveled by truck with him from New York to Denver, Colorado, engaging on and off in acts of sexual intercourse with defendant along the way. Upon reaching Denver, defendant, having lost interest in plaintiff, lodged her in a local hotel and left for his home in Meeteetse, Wyoming. Plaintiff, after contacting her brother and waiting for him to arrive, subsequently traveled to Meeteetse and confronted defendant concerning his behavior. As a result, it was agreed that defendant would accompany plaintiff and her brother back to Washington, D.C. and apologize to the family; yet after arriving in Washington and discussing the situation with her family, plaintiff for some reason which is neither totally clear nor probably capable of elucidation, accompanied the defendant to New York, there occupying a hotel room together and engaged once more

in sexual intercourse with him. Finally, on the morning of *April 21, 1970*, defendant broke off his relationship with the plaintiff and informed her for the first time that he had venereal disease, gonorrhea, and that now she probably had it too.

At trial, through the presentation of voluminous testimony by both parties, it was established that at some time prior to *March 22, 1970*, defendant had become aware that he was probably infected with venereal disease for on that day he visited a doctor in Dallas, Texas, complaining of pain and a urethral discharge. In response, the examining physician took a sample of the discharge for testing and administered a large dosage of fast-acting penicillin, telling defendant to return the next day for the test results. When defendant returned on *March 23, 1970*, the test results for gonorrhea having been found positive, a larger dose of a longer-acting penicillin was administered and defendant was advised to see his own doctor for further treatment. Defendant then left by plane for New York, arriving the same day, *March 23*, where immediately upon arrival he contacted his own physician, who after an external examination, stated that he could find no "clinical evidence of gonorrhea"—defendant had no current urethral discharge. On the basis of the previous treatment and this current information, defendant asserted at trial that it was his belief that as of his first sexual contact with the plaintiff on the night of *April 4–5, 1970*, his infection with gonorrhea had been cured.

Plaintiff, after being told by defendant on *April 21, 1970*, that she had probably contracted gonorrhea from him and should see a doctor, left New York for Washington, D.C. and, the following day, *April 22, 1970*, visited her personal physician who through a smear test confirmed that gonorrhea was present. In response to medication, plaintiff's infection with what her physician described as a "classic case of asymptomatic gonorrhea" was arrested by *May 14, 1970*, but more serious problems were to develop. Beginning in *January, 1973*, plaintiff noticed a pain in her lower

right side which by *March, 1973,* had become so severe and constant as to require medical attention. After various external medical tests provided negative results and antibiotic medication proved ineffective, major exploratory surgery was performed in *July, 1973.* As a result, plaintiff's physician found that because of the gonorrhea infection, and possibly other related secondary infections as well, scar tissue adhesions had formed within a number of areas of appellee's lower abdomen. He testified that although he had lysed (loosened or detached by surgical procedures) the adhesions, thus somewhat relieving temporarily the severe pain, because of the nature of the scar tissue involved, new adhesions would eventually form and the pain would very probably return again and continue in this cyclical manner for the remainder of plaintiff's life. He further advised that because of the scarring involved, plaintiff's ability to bear children had been greatly reduced.

This case is not the first lawsuit filed by the plaintiff against defendant. The record discloses that on April 5, 1971, a complaint was filed in a case entitled *Margaret Housen v. Angier St. George Biddle Duke, Jr.,* Civil No. 8557, in the District Court, Fifth Judicial District, Park County, Wyoming, which recited the relationship between plaintiff and defendant with dates and events consistent with plaintiff's testimony in the instant case, including the following:

"(6) That the Plaintiff did thereafter learn that she had contracted from Defendant a venereal disease, as a result of which the Plaintiff was subjected to medical expense for the care and treatment thereof, together with great pain, suffering, disgrace and humiliation in the eyes of her family and friends.

"(7) That the Defendant, at the times and places aforesaid, and knowing that he was infected with a communicable venereal disease, did then and there negligently, carelessly, and with utter and wanton disregard for the rights of the Plaintiff, expose and transmit to the Plaintiff an infectious venereal disease.

"(8) That as a proximate result of the negligent and careless acts of the Defendant, as aforesaid, the Plaintiff has suffered damages, and will continue to suffer damages from her humiliation and disgrace as aforesaid, damages in the sum of $100,000.00.

"WHEREFORE plaintiff prays judgment against the defendant as follows:

"(a) For general damages for her medical expenses, pain, suffering, disgrace and humiliation in the sum of $100,000.00;

"(b) For punitive damages in the sum of $100,000.00;

"(c) For her costs incurred in this action; and

"(d) For such other and further relief as to the Court may seem just and proper."

That complaint is noticed by the trial judge in two of his orders. That case was later dismissed.

Plaintiff filed this new action on *April 19, 1974,* seeking hospital expenses, doctor's expenses, wage loss, future medical expense, as well as damages for pain and suffering, present and future. In addition, based on an allegation that defendant was guilty of gross negligence when he infected her with gonorrhea, plaintiff requested $1 million in exemplary damages. By interrogatory, the jury found that defendant had been infected with gonorrhea at the time of his relations with plaintiff between *April 4 and April 21, 1970;* [1] and by verdict awarded

---

1. Interrogatories to the jury and its answers were:

"*Interrogatory No. 1*: Do you find that the Defendant was infected with gonorrhea during the period of April 4, 1970 through April 21, 1970? /s/Yes

"*Interrogatory No. 2*: Do you find that the Plaintiff was advised on April 18, 1970 that

the Defendant had or had had gonorrhea?
/s/No

The purported significance of Interrogatory No. 2 is that plaintiff filed her action on April 19, 1974. Defendant produced evidence that plaintiff was informed on April 18, 1970, that he had gonorrhea. If believed by the jury, that would, it was theorized as a matter of law, foreclose plaintiff under Wyoming's four year statute,

plaintiff $300,000.00 in compensatory damages, and $1,000,000.00 in exemplary or punitive damages. Following denial of various posttrial motions, the appeal herein was filed.

By way of both the answer filed in response to plaintiff's complaint as well as by motions prior, during and after trial, defendant alleged and strongly argued that based upon applicable statutes and case law, plaintiff's cause of action had been barred by the passage of time and her complaint should therefore be dismissed. Rule 8(c), W.R.C.P. requires that the statute of limitations be specifically set forth as an affirmative defense. In response, the trial judge ruled that inasmuch as plaintiff's scar adhesions had not been discovered until a date much later than when the infection itself had occurred, the applicable time period for limitation of action purposes was to be computed only from discovery of the adhesions; and defendant's assertion was thus denied.

■ Statutes of limitation have long been a part of the jurisprudence of the United States, all its states and the State of Wyoming. They are pragmatic devices to save courts from stale claim litigation and spare citizens from having to defend when memories have faded, witnesses are unavailable by death or disappearance and evidence is lost. Statutes of limitation are arbitrary by their very nature and do not discriminate between the just and unjust claim. They are not judicially made but represent legislative and public policy controlling the right to litigate. *Chase Securities Corporation v. Donaldson*, 1945, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628; reh. den. 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006. The statutes operate against even the most meritorious of claims and courts have no right to deny their application. *In re Smith's Estate*, 1949, 240 Iowa 499, 36 N.W.2d 815, 8 A.L.R.2d 640. When considering the statute of limitations, the na-

ture of injury, its extent, the amount of money damages involved, social considerations, and the emotional appeal the facts may have must pass to the background. The circumstances are only significant in the bearing they may have on where the cause of action arose, when it arose and when the time expired for pursuing the applicable judicial remedy.

Wherever we refer in this opinion to dates, places, or circumstances, such reference will be derived entirely from the evidence of the plaintiff, undisputed facts and answers of the jury to interrogatories propounded to them. We will disregard any evidence of the defendant in conflict. There is therefore left only a question of law to decide. We cannot and will not decide any questions of fact.

■ At the very foundation of plaintiff's claim against defendant lie the principles of the law of tort. One who negligently exposes another to an infectious or contagious disease, which such other person thereby contracts, can be held liable in damages for his actions. *Earle v. Kuklo*, 1953, 26 N.J. Super. 471, 98 A.2d 107 (tuberculosis); *Edwards v. Lamb*, 1899, 69 N.H. 599, 45 A. 480 (infection from a wound); *Kliegel v. Aitken*, 1896, 94 Wis. 432, 69 N.W. 67 (whooping cough); *Franklin v. Butcher*, 1910, 144 Mo.App. 660, 129 S.W. 428 (smallpox). Yet while the basic claim raised by plaintiff, albeit an unusual one, sounds in tort, the circumstance of its pursuance in Wyoming is somewhat unique. Since, as the evidence points up, there was no sexual contact between plaintiff and defendant in Wyoming, nor any tortious injury in this state, simple logic reveals that there could be no tortious conduct, no negligent exposure of plaintiff's body to disease by defendant in this, the forum state. There can be no question that plaintiff's cause of action could only be found as having arisen elsewhere.

An actionable tort is made up of several elements. A cause of action must arise

---

§ 1–3–105, W.S.1977, infra. The defendant himself denied telling plaintiff at any time that he had gonorrhea. The information purportedly was supplied to plaintiff by friends of the defendant. We need not consider what its effect might have been because it would raise only an academic question.

before limitations start. Prosser, Torts, 4th Ed., § 30, pp. 143–44, outlines the steps:

"Negligence, as we shall see, is simply one kind of conduct. But a cause of action founded upon negligence, from which liability will follow, requires more than conduct. The traditional formula for the elements necessary to such a cause of action may be stated briefly as follows:

"1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

"2. A failure on his part to conform to the standard required. These two elements go to make up what the courts usually have called negligence; but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be.

"3. A reasonable close causal connection between the conduct and the resulting injury. This is what is commonly known as 'legal cause,' or 'proximate cause.'

"4. Actual loss or damage resulting to the interests of another. Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.

\*  \*  \*  \*  \*  \*  \*

"It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.

\*  \*  \*  \*  \*  \*"

(Footnotes omitted.)

A "cause of action" is the fact or combination of facts which give rise to a "suit", the latter being a proceeding to enforce a right. *State ex rel. Merritt Oil Corporation v. District Court of Sixth Judicial District In and For Converse County,* 1932, 44 Wyo. 437, 13 P.2d 568, 570, cert. den. 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575. This court very recently in *Cantonwine v. Fehling,* Wyo.1978, 582 P.2d 592, a promissory note case, with approval quoted from *Bruner v. Martin,* 1907, 76 Kan. 862, 93 P. 165, 166:

" \*  \*  \* But the time when the cause of action arises determines also the place where it arises; for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises. \*  \*  \* "

The heavy weight of authority in interstate tort cases such as here with elements in different jurisdictions, is that the law of the place where the plaintiff sustains injury to her person controls. Restatement of Conflict of Laws, § 377; 2 Harper and James, § 30.4, p. 1961.

At common law, the limitation period of the forum jurisdiction, the lex fori, generally controlled the time within which causes of action had to be pursued, regardless of the fact that the cause itself in all its elements may have accrued outside the forum jurisdiction. Only when the limitation of action statute of the foreign jurisdiction in which the cause arose could be deemed substantive law rather than procedural would the foreign statute be applied by the forum court. *Parish v. B. F. Goodrich Co.,* 1975, 395 Mich. 271, 235 N.W.2d 570; Ehrenzweig, Conflict of Laws § 161 (1962); Vernon, Statutes of Limitation in the Conflict of Laws; Borrowing Statutes, 32 Rocky Mtn.L.Rev. 287 (1960). In order to avoid the confusion and problems associated with attempting to determine when a foreign limitation of action statute was substantive or procedural, a majority of states, including Wyoming, enacted what are referred to

as "borrowing" statutes. Section 1–3–117, W.S.1977,[2] which we find to be controlling in this regard, is simple and clear:

"If by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state."

The plaintiff takes an unusual position that since the case is tried in Wyoming, it must be tried under Wyoming law as a whole, including § 1–3–105, W.S.1977,[3] prescribing a period of limitation of four years "after the cause of action accrues," pertaining to causes of action arising in Wyoming. She then asserts that under the statutory section, since she discovered she was infected with gonorrhea "around April 22, 1970," her action was timely brought within the Wyoming four year period by filing her complaint on April 19, 1974. She elects to ignore the borrowing statute, § 1–3–117, supra. She then relies upon *Union Stockyards Nat. Bank of South Omaha, Nebraska v. Maika*, 1907, 16 Wyo. 141, 92 P. 619; and *Riley v. Union Pacific Railroad Co.*, U.S.D. C.Wyo.1950, 88 F.Supp. 391, aff'd. 10th Cir. 1950, 182 F.2d 765 to support a 51 Am. Jur.2d, Limitation of Actions, § 66, p. 645 statement as follows:

"*  *  *  the statutes of limitation of the place where the action is brought and the remedy is sought to be enforced, and not those of the place where the contract was made, the right in tort arose, or the plaintiff resides, or of the domicil of one or the other of the persons affected by the litigation, control in the event of a conflict of laws. *  *  *"

We have no argument with that rule in the case before us but we have no conflict of laws to make it applicable. Any conflict

has been erased by the legislature by enactment of the "borrowing" statute fixing the statute of limitations of this state to be the same as that of the jurisdiction in which the cause of action arose. That is explained in the next section (67) of the Am.Jur.2d, supra, quote. The limitations law of the jurisdiction in which a cause of action arises is the law of this state and has been ever since territorial days, even though a defendant is properly before a Wyoming court, the place where he may be personally served with process and a remedy found.

The position we take in this case is entirely consistent with the past utterances of this court with respect to causes of action arising outside the state of Wyoming. It was declared to be the law of this state, in *Ball v. Ball*, 1954, 73 Wyo. 29, 269 P.2d 302, 304, quoting from 15 C.J.S. Conflict of Laws § 12, p. 897 (now 15A C.J.S. Conflict of Laws § 12(2) pp. 453–455):

" 'It is thoroughly established as a general rule that the lex loci delicti, or the law of the place where the tort or wrong has been committed, is the law that governs and is to be applied with respect to the substantive phases of torts or the actions therefor, and determines the question of whether or not an act or omission gives rise to a right of action or civil liability for tort, *  *  *.' "

That rule is likewise in tune with the legislative policy of the state announced in its limitations "borrowing" statute. *Cope v. Anderson*, 1947, 331 U.S. 461, 67 S.Ct. 1340, 1343, 91 L.Ed. 1602, points out that the bottom line purpose of a state's borrowing statute is to require its courts to bar suits if

---

**2.** The only change since enacted by the Ninth Legislative Assembly of the Territory of Wyoming as part of the Code of Civil Procedure by § 43, Chapter 60, Session Laws of Wyoming Territory, 1886, has been to change the last word of the provision from "territory" to "state." Since, it has appeared as: R.S.1887, § 2379; R.S.1899, § 3464; C.S.1910, § 4308; C.S.1920, § 5577; R.S.1931, § 89–419; C.S. 1945, § 3–520, W.S.1957, § 1–25; Laws 1977, ch. 188, § 1.

**3.** Section 1–3–105, W.S.1977, in pertinent part provides:

"(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

*  *  *  *  *  *

"(iv) Within four (4) years, an action for:

*  *  *  *  *  *

"(C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated; and

*  *  *  *  *  *

the right to sue had already expired in another jurisdiction where the crucial combination of circumstances giving the right to sue had taken place, the existence of which affords a party a right to judicial interference in his behalf.

■ Plaintiff also argues, and the trial judge so held, that the statute of limitations did not commence to run until October, 1973, when adhesions resulting from the infection were discovered because it is the injury therefrom for which the damages are sought.[4] That position is not the accepted rule. The correct rule is very well summarized in 51 Am.Jur.2d, Limitation of Actions, § 135, p. 704:

" * * * As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not required that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action, and is not legally severable from its consequences. * * * "[5]

■ The doctrine is well supported by voluminous authority. We have selected some examples involving physical injury. By various ways and expressions they illustrate the rule. A cause of action accrues only when forces wrongfully put in motion produce injury. *Schwartz v. Heyden Newport Chem. Corp.,* 1963, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, 4 A.L.R.3d 814, cert. den. 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (substance later learned to be dangerous injected in plaintiff's sinuses; discovered to be cause of cancer after limitation had run; plaintiff lost an eye as a result; action barred). A single act of negligence creates only one cause of action and damage arising years later from that act of negligence does not create a new cause of action. *Schmidt v. Merchants Despatch Transportation Company,* 1936, 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450 (pneumoconiosis).

■ The statute of limitations attaches when there has been notice of the invasion of a legal right of the plaintiff, even though notice of its consequences does not materialize until later. *Cristiani v. City of Sarasota,* Fla.1953, 65 So.2d 878 (child struck violently about head by negligence of another, blindness developing as a result after statute had run; recovery denied). See also, *Nardone v. Reynolds,* Fla.1976, 333 So.2d 25, citing *Cristiani.* In *Dowling v. Lester,* 1946, 74 Ga.App. 290, 39 S.E.2d 576, the defendant restauranteur was negligent in serving food containing a rock to plaintiff, which she bit down on resulting in a broken tooth, the rest of which was immediately extracted by a dentist and replaced with a denture

---

4. The full text of the trial judge's order in regard to dividing damages to control the running of limitations:

"THIS MATTER, having come on to be heard by the Court on a conference call between the parties, the Court having heard the arguments of counsel and being fully advised in the premises, finds with respect to the application of the Statute of Limitations in this case, as follows:

"1. That there is no question in the Court's mind but what Wyoming law pertaining to the Statute of Limitations is based upon discovery of the injury;

"2. Therefore, the Court finds that if the evidence supports said statements, the Statute did not begin to run insofar as the adhesions were concerned until 1973;

"3. That in reviewing the original case which was filed April 5, 1971 and the present

Complaint, paragraph 2 thereof, there is no question but what the Plaintiff knew immediately after the incidents in question that she had been infected, and therefore the Court finds that insofar as any recovery for humiliation, etc for the alleged infliction of the disease, is barred by reason of the Statute of Limitations.

"IT IS THEREFORE ORDERED BY THE COURT:

"1. That the Statute of Limitations did not begin to run insofar as the adhesions were concerned, until 1973;

"2. That recovery for humiliation, etc. for the alleged infliction of the disease, is barred by reason of the Statute of Limitations."

5. See also Anno. 4 A.L.R.3d 821, 830, § 4 entitled "Statute of Limitations: When Cause of Action Arises on Action Against Manufacturer or Seller of Product Causing Injury or Death."

attached to an adjoining tooth. The adjoining tooth in time came loose, soreness developed and plaintiff developed a related physical condition, an injury to her person. The action was not brought within the applicable period of limitation from the date the tooth was broken. It was held that the new extent of injury arising from complications did not start the statute running anew.

Applying Louisiana law in *Nivens v. Signal Oil and Gas Co., Inc.,* 5th Cir. 1975, 520 F.2d 1019, reh. den., amend., 523 F.2d 1382, cert. den. 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763, plaintiff struck his head on a galley cabinet door suffering pain, dizziness, a red spot and swelling, later discovered to be a skull fracture with serious after effects. The Court held that the injuries could not be bifurcated and the later found complications made the subject of another and delayed prescriptive period. Where a coincidence of the negligent act and the fact of some damage occurs, the cause of action comes into being and the applicable statute of limitations begins to run, even though the ultimate damage is unknown or unpredictable. *Dalton v. Dow Chemical Co.,* 1968, 280 Minn. 147, 158 N.W.2d 580 (poisoning from exposure to chemical in cleaning solvent; paraplegic barred).[6] To allow successive actions as additional damages arise would nullify the statutes of limitation and defeat their very purpose.

The jury found as a fact that the defendant was the bearer of gonorrhea during the period April 4, 1970 to April 21, 1970. The plaintiff's testimony, admitted by the defendant, is that sexual intercourse between the plaintiff and defendant took place on the dates and in other state jurisdictions in accordance with an itinerary as follows:

April 4–5, 1970. State of Virginia.
April 7–8, 1970. Tuxedo, New York.
April 8–9, 1970. Erie, Pennsylvania.
April 9–10, 1970. State of Iowa.
April 10–11, 1970. Ogallala, Nebraska.
April 20–21, 1970. New York City, New York.

There is no evidence of sexual intercourse taking place in the State of Wyoming. We must therefore look elsewhere for a jurisdiction in which the cause arose. While it is perhaps unusual that the defendant perpetrated his negligent acts and caused injury to plaintiff's body in several different states and which may give an appearance of complexity, an application of settled rules of tort law in the jurisdictions involved clears away any suggestion of obscurity.

The limitation of action statute of the foreign jurisdiction in which the cause in question arose is applied by the forum court irregardless of whether or not the foreign limitation could be characterized as substantive or procedural. Thus, in almost all instances, if a plaintiff's cause of action is time-barred in the jurisdiction in which the cause of action arose, it would be barred by the passage of time in the forum court as well. Such a rule not only clears up any substantive procedural conflict problem, but eliminates as well the possibility of the plaintiff shopping for a favorable forum in which to revive a dead claim. *Long v. Pettinato,* 1975, 394 Mich. 343, 230 N.W.2d 550; Ehrenzweig, Conflicts of Law, § 161 (1962); Vernon, supra, 32 Rocky Mtn.L.Rev. 287. It thus becomes of acute importance in the situation at bar to specifically deter-

---

**6.** See also to the same effect: *Sanchez v. Wade,* Tex.Civ.App.1974, 514 S.W.2d 812. (Once patient knows condition, cause of action accrues, regardless of ignorance of extent and permanency of disease.) *Christian v. Daniell Battery Manufacturing Co., Inc.,* La.App.1973, 279 So.2d 214. (Plaintiff aware that he was injured and was treated; later complications did not postpone starting of limitations.) *Rankin v. Sowinski,* 1972, 119 N.J.Super. 393, 291 A.2d 849. (Plaintiff knew jaw injured by dentist at time of extraction of tooth; cause accrued; lack of knowledge of extent of injury does not toll the statute of limitations.) *Caudill*

*v. Arnett,* Ky.1972, 481 S.W.2d 668. (Injury known; not fully aware of extent of injury until several years later discovered during exploratory surgery; barred.) *Matthieu v. Piedmont Natural Gas Company,* 1967, 269 N.C. 212, 152 S.E.2d 336. (Cause of action springs into existence with first damage; subsequent damage does not start a new cause of action). *Street v. Consumers Mining Corporation,* 1946, 185 Va. 561, 39 S.E.2d 271, 167 A.L.R. 886. (Plaintiff contracted silicosis 1936, discovered 1940, died from disease 1942; running of statute not postponed by fact that substantial damage did not occur until after statute had run.)

mine, for limitation of actions purposes, where and when plaintiff's cause of action arose. In making such a determination based upon a borrowed limitational period, in all jurisdictions having a borrowing statute, with the exception of Ohio, not only is the specific prescriptive period utilized, but all of its accouterments as well whether in the form of additional statutory provisions or interpretive judicial decisions. Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 U. of Fla.Law Rev. 33, 57 (1962). As the court in *Devine v. Rook,* Mo.App.1958, 314 S.W.2d 932, 935, has very aptly stated:

"But when such [limitational] statute is so borrowed, it is not wrenched bodily out of its own setting, but taken along with it are the court decisions of its own state which interpret and apply it, and the companion statutes which limit and restrict its operation. This we think is the general law." (Bracketed material added, footnote omitted.)

Thus, in applying a "borrowed" statute, we must consider not only the borrowed limitation of action statute itself, but also any applicable tolling or other statutes as well as pertinent court cases. In effect, plaintiff's cause must be viewed as if filed in the state where under the laws of that state a cause of action accrued.[7]

■ We find and hold that a cause of action arose in the state of New York on April 8, 1970 and April 21, 1970. New York City, New York was the place where the defendant committed his second and last acts of negligence in communicating disease to the plaintiff. In New York it has long been the rule that in classic actions of negligence, damage is the gist and essence of a plaintiff's cause, *Schwartz v. Heyden New-*

port Chemical Corporation,* supra, and the statute of limitations commences to run at the time injury is produced (in personal injury cases) and there is damage to the structure of the body. *Schwartz* holds that the cause of action is complete when the invasion of the body by injury takes place "independently of any actual pecuniary damage." The injury is considered a trespass upon the person of the injured plaintiff.

■ The court in *Schwartz* strongly relied on *Schmidt v. Merchants Despatch Transportation Company,* supra, the court in the latter case stating at 200 N.E. 827:

"That does not mean that the cause of action accrues only when the injured person knows or should know that the injury has occurred. The injury occurs when there is a wrongful invasion of personal or property rights and then the cause of action accrues. Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Consequential damages may flow later from an injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. So far as such consequential damages may be reasonably anticipated, they may be included in a recovery for the original injury, though even at the time of the trial they may not yet exist. When substantial damage may result from any wrong affecting the person or property of another, a cause of action for such wrong immediately accrues." [Citation of cases omitted.]

---

7. During the remaining course of this opinion, we shall be citing and quoting from the statutes of other states. As allowed by the law of the State of Wyoming, we shall take judicial notice of those considered. Section 1–12–302, W.S. 1977:

"Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States."

Section 1–12–303, W.S.1977:

"The court may inform itself of foreign laws in such manner as it deems proper, and

the court may call upon counsel to aid it in obtaining such information."

Counsel for defendant informed the trial judge of his reliance on the statutes of limitation of other states. The statutes we set out are those applicable at the time of the occurrence herein and are found in the Wyoming State Law Library, Cheyenne.

"We must apply that rule here. The injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust. For that injury, including all resulting damages, the defendant was then liable. The disease of the lungs was a consequence of that injury. Its result might be delayed, or, perhaps, even by good fortune averted; nevertheless, the disease resulted naturally, if not inevitably, from a condition created in the plaintiff's body through the defendant's alleged wrong. It cannot be doubted that the plaintiff might have begun an action against the defendant immediately after he inhaled the dust which caused the disease. No successful challenge could have been interposed on the ground that the action was prematurely brought because at the time it was commenced no serious damage to the plaintiff had yet developed. In that action the plaintiff could recover all damages which he could show had resulted or would result therefrom. In effect, the plaintiff is asking this court to hold that the statutory period of limitation begins only from the time that the plaintiff had reasonable assurance that serious damage had resulted or would result from past injury. The statute provides in unambiguous language that the period of limitation begins to run at the moment when right to begin an action accrues. The same test must be applied to a challenge that the action is stale as to a challenge that the action has been brought prematurely."

See also *Thornton v. Roosevelt Hospital,* 1977, 59 A.D.2d 680, 398 N.Y.S.2d 659, wherein a substance was injected into the plaintiff's decedent, allegedly resulting in the onset of cancer. The court held that "[t]he time of invasion of the decedent's body, and not any later time, began the period to be measured by the Statute of Limitation, and any such cause would also be time-barred." The court cited *Schwartz* and *Schmidt* as standing for that rule. Where more than the statutory period of limitations of three years from injury (onset of cancer) had lapsed, an action based on negligence as a cause was barred. *Karp v. Liggett & Myers Tobacco Company,* 1972, 40 A.D.2d 634, 336 N.Y.S.2d 101. New York jurisprudence has never retreated from that position in the ordinary negligently caused disease case.

The *Schmidt* doctrine as applied to this case means that a cause of action arose in New York when the defendant had sexual intercourse with the plaintiff at the Motel in the Mountains in Tuxedo, New York on the morning of April 8, 1970. At that time he introduced into the body of the plaintiff infectious pus producing bacteria known as gonococci, which causes the disease of gonorrhea. There is no question but that under the law of New York the defendant was guilty of a tortious act of negligence and the plaintiff was injured by the placement in her body of deleterious matter. Then on the morning of April 21, 1970, the defendant once again at a hotel in New York City, New York repeated the tortious act and once again in the same fashion introduced into the body of plaintiff the bacteria of gonococci.

It must be realized that the entire affair between plaintiff and defendant embraced only a period of about two weeks so, with the period of limitations involved, it would not make much difference whether the rule of New York, the rule of the statute starting on the date of last exposure mentioned elsewhere in this opinion or the rule of discovery which we use in Wyoming,[8] were applied. It is not our choice; we must accept the law of the jurisdiction where the cause arose.[9] We must therefore

---

8. When a cause of action arises in the State of Wyoming, the period of limitations begins to run when the plaintiff knows or has reason to know the existence of a cause of action. *Banner v. Town of Dayton,* Wyo.1970, 474 P.2d 300 (when the injury was discovered); *Town Council of Town of Hudson v. Ladd,* 1928, 37 Wyo. 419, 263 P. 703 (when the injury and cause became apparent).

9. Generally, see Anno. entitled, "When limitation period begins to run against cause of action or claim for contracting of disease," 11 A.L.R.2d 277 and later case service.

conclude that since New York was the place of exposure, as was Schmidt's exposure to pneumoconiosis and the breathing of deleterious dust causing injury, a cause of action also arose in New York when defendant left gonococci in the plaintiff's body. It is a reasonable inference that since gonorrhea was found to exist in plaintiff the day after her final relations with the defendant, it existed likewise in New York. Having concluded a cause of action accrued in the State of New York, the "borrowing" statute of Wyoming controls the determination of whether or not plaintiff's action has been barred. Under New York law, an action to recover damages for personal injury, unless involving certain specific causes of action not relevant here, must be commenced within three years.[10]

Plaintiff's cause of action accrued in New York at the latest on April 21, 1970, the date of last sexual contact between the parties. Disregarding for the moment any other possibly applicable statute, plaintiff's action not having been filed until April 19, 1974, it appears to be barred, and defendant has so asserted. In response, plaintiff has urged that because of defendant's absence from New York following his tortious conduct, the applicable limitation period has by statute been tolled. N.Y. CPLR § 207.[11] We, as did the New York Supreme Court in a recent case, must disagree with the plaintiff. *Burwell v. Whitmoyer,* 1977, 56 A.D.2d 950, 392 N.Y.S.2d 512, 513:

"We now pass to plaintiff's contention that the statute of limitations was tolled pursuant to CPLR 207. While that section does provide for the tolling of the statute where a defendant is out of the state for more than four months after the action has accrued, subdivision 3 provides for an exception where the jurisdiction over the person can be obtained without personal delivery of the summons to him within the state. Although defendant absented himself from the state * * * the statute of limitations, in our opinion, was not tolled by CPLR 207 (citation omitted). Plaintiff at all times during

---

The rule of last exposure in the case of continuing negligence in causing disease to another is commonly accepted to be that the injury occurs on the last day of exposure. After repeating the first principles that a cause of action does not arise unless there has been first a negligent act and second an actual injury, however slight proximately resulting therefrom, the court in *Biglioli v. Durotest Corporation,* 1957, 44 N.J. Super. 93, 129 A.2d 727, held that where a plaintiff is exposed over a period of time to beryllium there is but a single indivisible continuing wrong, with the statute running from the time of the last exposure to the dust, irrespective of when the disease of berylliosis is discovered or consequential damages result. The injury is present in the body.

The same rule was followed in *Wright v. Carter Products,* 2nd Cir., 244 F.2d 53, where the defendant negligently concocted the deodorant Arrid which plaintiff used daily over a period of time and developed dermatitis. The court held the statute commenced to run as of the last application.

10. New York Civil Practice Law and Rules, § 214—Actions to be commenced within three years:

"The following actions must be commenced within three years:

\* \* \* \* \* \*

"5. an action to recover damages for personal injury except as provided in § 215;"

11. N.Y. CPLR § 207:

"If, when a cause of action accrues against a person, he is without the state, the time within which the action must be commenced shall be computed from the time he comes into or returns to the state. If, after a cause of action has accrued against a person, he departs from the state and remains continuously absent therefrom for four months or more, or he resides within the state under a false name which is unknown to the person entitled to commence the action, the time of his absence or residence within the state under such a false name is not a part of the time within which the action must be commenced. This section does not apply:

"1. while there is in force a designation, voluntary or involuntary, made pursuant to law, of a person to whom a summons may be delivered within the state with the same effect as if served personally within the state; or

"2. while a foreign corporation has one or more officers or other persons in the state on whom a summons against such corporation may be served; or

"3. while jurisdiction over the person of the defendant can be obtained without personal delivery of the summons to him within the state."

the statutory period could have obtained jurisdiction over defendant (CPLR 313; 308, subd. [5]; 302, subd. [a], par. 2)." See as well, *Yarusso v. Arbotowicz,* 1977, 41 N.Y.2d 516, 393 N.Y.S.2d 968, 362 N.E.2d 600; *Goodemote v. McClain,* 1972, 40 A.D.2d 22, 337 N.Y.S.2d 79; *Dobkin v. Chapman,* 1968, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451; *Fishman v. Sanders,* 1965, 15 N.Y.2d 298, 258 N.Y.S.2d 380, 206 N.E.2d 326; *Massik v. Zimmerman,* 1966, 26 A.D.2d 901, 275 N.Y.S.2d 373. Under the provisions of N.Y. CPLR § 302, the defendant, although a non-domiciliary of the state of New York, was still subject to the personal jurisdiction of the courts of that state based upon his commission of a tortious act within the confines of the state itself. N.Y. CPLR § 302.[12]

Once found subject to the court's jurisdiction, service of process could have been made upon defendant notwithstanding his absence from the state. N.Y. CPLR § 308.[13]

" * * * Because the alleged negligence of defendant * * * was a tortious act committed within the State, personal jurisdiction could have been acquired under CPLR 313 and 302 by service in Florida, after defendant had transferred his residence there, in any manner in which service can be made in this State." *Yarusso v. Arbotowicz,* supra, 393 N.Y.S.2d at 970, 362 N.E.2d at 602.

It would thus seem clear that had plaintiff brought this action against defendant in New York, the situs of its accrual, by the statutes and authorities of that state, her cause of action would be barred. The limitational period having run in New York, it has run in this, the forum state, as well. § 1–3–117, W.S.1977, supra.

We observe in passing that while there is no ruling of the trial judge here which specifically applies by reference any foreign statute of limitations, the distinct impression appears, particularly from the court's order, footnote 4, that the statute of New York was applied to keep the case alive as to the adhesions appearing first in 1973 and their consequences. The statute of limitations goes to the cause of action not the various elements of damages which arise as a result of the injury. Damages excluded by the trial judge were within the Wyoming four year limitation urged by plaintiff as applicable.

■ In other jurisdictions in which defendant committed his acts of negligence, the cause of action is likewise either barred by a statute of limitations or no cause of action there arose. The defendant's first installment of negligence, April 4–5, 1970, was in the State of Virginia. Arguably, under the law of that state, the cause of action could have arisen there; if indeed it did, it is likewise barred by that state's limitations. In Virginia, the appropriate

**12.** N.Y. CPLR § 302(a)(2)

"§ 302. Personal jurisdiction by acts of non-domiciliaries

"(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

* * * * * *

"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or * *."

**13.** N.Y. CPLR § 308(5):

"§ 308. Personal service upon a natural person

"Personal service upon a natural person shall be made by any of the following methods:

* * * * * *

"5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section."

N.Y. CPLR § 313:

"§ 313. Service without the state giving personal jurisdiction

"A person domiciled in the state or subject to the jurisdiction of the courts of the state under section 301 or 302, or his executor or administrator, may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state, territory, possession or country in which service is made or by any duly qualified attorney, solicitor, barrister, or equivalent in such jurisdiction."

limitational period for personal injuries of the kind sustained herein is two years,[14] and even though the defendant did not then and does not now reside in Virginia, he was still subject to the personal jurisdiction of its courts through its long arm statutes because of his allegedly tortious conduct within the state.[15]

The legislature of Virginia has removed some of the complexities of determining when the statutes of limitation of that state start to run by enactment of the Code of Virginia, § 8.01–230:

"In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person, when the breach of contract or duty occurs in the case of damage to property and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01–233, subsection C of §§ 8.01–245, 8.01–249, 8.01–250 or other statute." (Other sections referred to have no application.)

That provision appears to codify the traditional rule of Virginia case law. *Hawks v. DeHart,* 1966, 206 Va. 810, 146 S.E.2d 187. In *Hawks* the court made it clear that:

"We are committed in Virginia to the rule that in personal injury actions the limitation on the right to sue begins to run when the wrong is done and not when the plaintiff discovers that he has been damaged."

The court then went on to cite *Street v. Consumers Mining Corp.,* supra, footnote 6, a disease case bearing some resemblance to the case before us now. The plaintiff there breathed silica dust and contracted the disease of silicosis. His last exposure to the dust was 1936. It was there held that the statute began to run upon the date of his last exposure.

There is no testimony or evidence in this case as to exact time the plaintiff was infected by exposure to defendant's disease. We shall assume for the moment that she was infected instantly upon the sexual intercourse taking place in the Virginia parking lot. If that was the case, a strict reading of the Virginia statute, § 8.01–230, supra, indicates that the cause of action arose in Virginia on April 4–5, 1970. On the

**14.** Code of Virginia § 8.01–243 in pertinent part:

"A. Unless otherwise provided by statute, every action for personal injuries, whatever the theory of recovery, except as provided in B hereof, shall be brought within two years next after the cause of action shall have accrued.
\* \* \* "

**15.** Code of Virginia § 8.01–328.1 in pertinent part:

"A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's
\* \* \* \* \* \*
"3. Causing tortious injury by an act or omission in this State;
\* \* \* "

Code of Virginia § 8.01–329:

"Service of process or notice.—A. When the exercise of personal jurisdiction is authorized by this chapter, service of process or notice may be made in the same manner as is provided for in chapter 8 (§ 8.01–285 et seq.) of this title in any other case in which personal jurisdiction is exercised over such a

nonresident party, or process or notice may be served on any agent of such person in the county or city in this State in which he resides or on the Secretary of the Commonwealth of Virginia, hereinafter referred to in this section as the 'Secretary,' who, for this purpose, shall be deemed to be the statutory agent of such person.

"B. Service of such process or notice on the Secretary shall be made by leaving a copy of the process or notice, together with the fee prescribed in § 14.1–103 in the hands of the Secretary or in his office in the city of Richmond, Virginia, and such service shall be sufficient upon the nonresident, provided that notice of such service and a copy of the process or notice are forthwith sent by registered or certified mail, with delivery receipt requested, by the Secretary to the defendant or defendants at such defendant's or defendants' last known post-office address, and an affidavit of compliance herewith by the Secretary or someone designated by him for that purpose and having knowledge of such compliance, shall be forthwith filed with the papers in the action."

other hand, if we follow the holding of the Virginia court's *Street* case, supra, that the statute begins to run upon the date of last exposure, then the cause of action arose in New York City, New York, on April 22, 1970 where the last act of sexual intercourse took place. In the first instance, the plaintiff is barred in Virginia by its two year statute of limitations. In the other no cause of action arose in Virginia.

Virginia has a tolling statute, Code of Virginia, § 8.01–229, in pertinent part:

"D. When an action has been commenced and service of process upon a defendant shall be prevented by such defendant

1. Departing from the Commonwealth; or

2. Absconding or concealing himself; or

3. Filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act; or

4. Using any other direct or indirect means to obstruct the prosecution of such cause of action;

then the time that such prevention may have continued shall not be counted as any part of the period within which the action must be brought."

The Supreme Court of Virginia has held that the limitation period is not tolled if process can be served despite the defendant's absence as by service of process under Virginia's "long arm" statute, footnote 15, because absence from the state does not obstruct the prosecution of a plaintiff's claim. *Bergman v. Turpin,* 1965, 206 Va. 539, 145 S.E.2d 135. This court has heretofore cited this case, we also holding that the tolling statute is not applicable where there is another method of service available to the plaintiff. *Tarter v. Insco,* Wyo.1976, 550 P.2d 905.

Even if it could be considered that a cause of action arose in Pennsylvania,[16] its statute of limitations bars any action there. The Pennsylvania statute of limitations, 12 P.S. § 34,[17] provides that a personal injury action "must be brought within two years from the time when the injury was done and not afterwards." The tolling statute of Pennsylvania, 12 P.S. § 40, applies only to residents:

"In all civil suits and actions in which the cause of action shall have arisen within this state the defendant or defendants in such suit or action, who shall have become non-resident of the state after said cause of action shall have arisen, shall not have the benefit of any statute of this state for the limitations of actions

---

**16.** In Pennsylvania a right of action accrues only when injury, as defined by the courts of that state, is sustained by the plaintiff, not when the causes are set in motion which ultimately produce injury as a consequence. *Ayers v. Morgan,* 1959, 397 Pa. 282, 154 A.2d 788; *Foley v. Pittsburg-Des Moines Co.,* 1949, 363 Pa. 1, 68 A.2d 517, supra. Its two year period begins to run when the injury is done; an injury is considered done "when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan,* supra. A reading of the cited authorities discloses the rule to be tantamount to the rule of discovery, i. e., a cause of action arises upon discovery of the injury (physically objective and ascertainable). The final significant event then was discovery of the injury— presence of the disease, gonorrhea—in Washington, D.C. after examination and testing April 22, 1970. No cause arose in Pennsylvania because no injury, as defined by the Pennsylvania court, occurred nor was discovered in that state, though the cause thereof—defendant's

implanting of gonococci—took place in Pennsylvania. The question of conflicts was decided in *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Company,* 3rd Cir. 1966, 372 F.2d 18, where it was held that the Pennsylvania "borrowing" statute, 12 P.S., § 40, must be applied because the injury occurred in Florida arising out of a cause generated in Pennsylvania; so, therefore, Florida was where the action arose and the latter state's limitation statutes barred the action.

**17.** 12 P.S. § 34:

"Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law."

during the period of such residence without the state."

It affects all defendants who become non-residents after the cause shall have arisen— " 'meaning, necessarily, defendants who had a residence at the time the cause of action arose, else they could not "become" non-residents.' " *Hunter v. Bremer,* 1917, 256 Pa. 257, 100 A. 809, quoting from *Bates v. Cullum,* 1896, 177 Pa. 633, 637, 35 A. 861, 862, 34 L.R.A. 440, 55 St.Rep. 753. Since defendant was a resident of the State of Wyoming at the time of all the occurrences herein, the Pennsylvania statute has run. The presence of plaintiff and defendant in Pennsylvania was only transient.

■■■■■ We must also conclude that no cause of action arose in Iowa. Iowa follows the Restatement, Conflict of Laws, § 377 rule that: "The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." *Andersen v. National Presto Industries, Inc.,* 1965, 257 Iowa 911, 135 N.W.2d 639. It is interesting to note that in *Andersen,* to support its position that parts of a tort may arise in different places, it cites *Price v. State Highway Commission,* 1946, 62 Wyo. 385, 167 P.2d 309, 312, where it is said:

> "* * * Generally speaking and without undertaking in the least an all inclusive definition, a tort has a meaning somewhat similar to wrong and is an unlawful act injurious to another independent of contract."

Of course, reference is made to the fact that a tort is in at least two parts: (1) an act committed resulting in (2) damage. Iowa further follows the general rule that a cause of action accrues when the injured party has a right to institute and maintain a suit; a cause of action based on negligence does not accrue until the plaintiff has in fact discovered that he has suffered injury. *Chrischilles v. Griswold,* 1967, 260 Iowa 453, 150 N.W.2d 94. Since Iowa follows the discovery rule, as noted, it would appear that it was in Washington, D.C. that the cause of action accrued as far as that state is concerned because it was in the District

of Columbia that plaintiff discovered that she had in fact suffered injury by virtue of the negligent conduct of the defendant.

■■■■■ Nebraska also follows the majority rule that a cause of action accrues when injury actually occurs and there is a basis for a cause of action. *Omaha Paper Stock Company, Inc. v. Martin K. Eby Construction Company, Inc.,* 1975, 193 Neb. 848, 230 N.W.2d 87. A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. *Weiss v. Weiss,* 1966, 179 Neb. 714, 140 N.W.2d 15. That rule is more fully said in *Bend v. Marsh,* 1945, 145 Neb. 780, 18 N.W.2d 106, 110:

> "The accrual of a cause of action means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued and the statute begins to run, but not until that time. So whether at law or in equity, the cause of action arises when, and only when, the aggrieved party has a right to apply to the proper tribunal for relief."

Under the law of Nebraska, no action arose there.

There are only three rules that can be applied as to when a cause of action accrues in the case of continuing negligence. Applying those rules to Nebraska, in this case there is no proof as to just when plaintiff was actually *infected—the only medically* certain inference is that she had gonorrhea in New York, on April 21, 1970. The gonococci may have taken hold at once following the first exposure or the results delayed until some later time. We cannot guess and will not try to. Rules for such situations have been devised and we have mentioned or discussed them all. Applying any one precludes the plaintiff one way or another.

■■■■ If we follow the New York rule, of injury being concurrent with the tortious act of invading the plaintiff's body with a dangerous substance, the Nebraska statute of limitations bars plaintiff. The exposure in Nebraska took place during the night of April 10–11, 1970. Nebraska has a four

year statute of limitations for personal injury actions, § 25–207, Revised Statutes of Nebraska, 1943, Reissue of 1975, supplementing § 25–201.[18] It likewise has a tolling statute, § 25–214, Revised Statutes of Nebraska 1943, Reissue of 1975, covering absent persons.[19] Nebraska has a long arm statute, § 25–536, Revised Statutes of Nebraska, 1943, Reissue of 1975, enacted in 1967, in pertinent part:

"(1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

\* \* \* \* \* \*

"(c) Causing tortious injury by an act or omission in this state;
\* \* \* "

While we have been unable to find a Nebraska case on the subject, we would expect it to follow the general rule that the tolling statute is not applicable where a long arm statute makes a substituted method of personal service available to the plaintiff. *Tarter v. Insco,* supra, 550 P.2d 905, at footnote 5 of that case. Plaintiff's action was therefore barred in Nebraska under the New York rule, on April 12, 1970, over four years prior to filing the instant action.

If the Wyoming discovery rule, footnote 8, is followed, then the cause of action as to Nebraska arose in Washington, D.C. where the presence of gonorrhea in plaintiff was confirmed. A federal court in a diversity action believes that Nebraska would follow the discovery rule in a beryllium case where plaintiff was exposed over a long period, when the negligence arose in Massachusetts and the injury occurred in Nebraska. *Sylvania Electric Products v. Barker,* 1st Cir. 1955, 228 F.2d 842, cert. den. 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854. If we follow the last exposure rule which we have discussed, then the cause of action, as far as Nebraska is concerned, arose in New York where the last act of sexual intercourse took place.

We foreclose Washington, D.C. as the place where a cause of action arose because no tortious act was committed there, nor was that a place where the plaintiff was injured by the implanting of infection by the defendant. It is true that Washington, D.C. was the place where plaintiff incurred medical expense for diagnosis and treatment of the injury inflicted upon her but has no controlling force as to where the cause arose. While she had money damages in the District of Columbia, her physical injury of contracting gonorrhea took place elsewhere. The law of the District in that regard is expressed by its courts in an analogous way where it has dealt with its long arm statute. A good example is *Leaks v. Ex-Lax, Inc.,* USDC DC 1976, 424 F.Supp. 413. The District's long arm statute [20] provides that a court of the

---

18. Section 25–207, R.R.S.1943, 1975:
  "The following actions can only be brought within four years: (1) An action for trespass upon real property; (2) an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, except as provided in sections 30–2206 and 76–288 to 76–298."
  Section 25–201, R.R.S.1943, 1975:
  "Civil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued."

19. Section 25–214, R.R.S.1943, 1975:
  "If, when a cause of action accrues against a person, he is out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

20. Section 13–423, D.C.Code 1973 in pertinent part:
  "(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
  \* \* \* \* \* \*
  "(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does

District may exercise personal jurisdiction in some cases on a claim of relief for causing tortious injury in the District by an act or omission outside the jurisdiction. The plaintiff was in Phoenix, Arizona where she purchased a box of Ex-Lax pills and took two. She shortly suffered a severe reaction and went to a Phoenix hospital for treatment and also saw a physician who prescribed treatment. A month later she returned to the District where she claimed she continued to suffer on a continuing basis and, because of incapacity, lost income. The court held that Arizona being the place when the injury arose, any damage incurred in the District thereafter was only one measure of her total damages. We thus see the district court of the District of Columbia refusing to take jurisdiction in an action where the injuries arose elsewhere and in refusing to divide damages to acquire jurisdiction. The principles apply comparably to the situation before us. See also *Aiken v. Lustine Chevrolet, Inc.,* USDC DC 1975, 392 F.Supp. 883, where the tort was committed in Maryland but the damage arose in the District.

We therefore must conclude after extensive research that by virtue of Wyoming's borrowing statute, the filing of plaintiff's complaint on April 19, 1974 was untimely.

Reversed with directions to vacate the judgment for plaintiff and enter judgment for the defendant.

THOMAS, Justice, concurring.

I concur in the result in this case that was reached by the majority of the Court. I would, however, reach that result in a different manner. In my view this action was barred by the three-year statute of limitations of the District of Columbia (§ 12–301, D.C.Code Ann. (1973)), which is the place where the cause of action arose and to which we are directed by § 1–3–117, W.S.1977. The District of Columbia, like our state, follows a discovery rule with respect to the accrual of an action in tort.

*Grigsby v. Sterling Drug, Inc.,* 428 F.Supp. 242 (1975); affirmed, 177 U.S.App.D.C. 270, 543 F.2d 417 (1976). In the *Grigsby* case the court concluded that the statute of limitations began to run when the plaintiff knew, or through the exercise of due diligence could have known, that she had a claim that her injuries were caused by a defect in the defendant's product. That knowledge was acquired upon her examination by a physician in October even though in *Grigsby*'s instance she had symptoms manifesting injury in August. It was not until the examination by her physician in Washington, D. C., that Margaret Housen knew of her injury, and prior to that time all of the elements of the cause of action in tort were not present. No injury to the plaintiff could be demonstrated prior to that examination, and in any other jurisdiction we must speculate as to the occurrence of any injury.

I am impressed with the reference in the majority opinion and the dissenting opinion to A.L.I. Restatement, Conflict of Laws, § 377 (1934), which sets forth the rule as follows:

"§ 377. The Place of Wrong.

"The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."

As I understand the thrust of the majority opinion that place is determined to be the state of New York. Included within § 377 is a section entitled "Summary of Rules in Important Situations Determining Where a Tort is Committed.", and included within that section is a rule set forth as follows:

"2. When a person causes another voluntarily to take a deleterious substance which takes effect within the body, the place of wrong is where the deleterious substance takes effect and not where it is administered.

"Illustration:

"2. A, in state X, mails to B in state Y a package containing poisoned candy. B eats the candy in state Y and gets on

or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

\* \* \*"

a train to go to state W. After the train has passed into state Z, he becomes ill as a result of the poison and eventually dies from the poison in state W. The place of wrong is state Z."

This illustration seems peculiarly applicable to the factual situation herein in which the infection could have been transmitted in any one of a number of states. The plaintiff did not manifest any symptoms of the disease, and the illness was identified in Washington, D. C., upon physical examination. I have no quarrel with the general discussion of the law relative to statutes of limitations set forth in the majority opinion, but those concepts are designed to reach a degree of certainty in the law, albeit arbitrarily. Their application in this instance identifies the District of Columbia as the place of the wrong.

The application of the District of Columbia statute is consistent with views this Court previously has expressed in *Ball v. Ball,* 73 Wyo. 29, 269 P.2d 302 (1954); *Brown v. Riner,* Wyo., 500 P.2d 524 (1972); and *Cantonwine v. Fehling,* Wyo., 582 P.2d 592. Even if one should turn to the more modern "substantial relationships" test set forth in A.L.I. Restatement (Second), Conflict of Laws, §§ 145, 146 (1971), the result would be the same. According to § 146 of that work the law of " * * * the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties * * *." Section 145 lists the contacts to be taken into account in applying the principles of § 6 to a tort situation, and none of them result in any other state having a more significant relationship to the occurrence and these parties than the District of Columbia. Some of these factors have no application at all under this set of circumstances.

In this particular instance since the selection of the District of Columbia avoids any speculation with respect to the facts, and because of the suggestions in the several treatises, including those cited and discussed in the majority and dissenting opinions, I would select as the place of injury the District of Columbia. Applying its statute of limitations which begins to run upon discovery of the illness, I would hold that the action was barred by the applicable statute of limitations.

McCLINTOCK, Justice, dissenting.

In brief outline of the basis of my dissent, I agree with the majority that under the common law, limitations of actions are governed by the law of the forum. Section 1-3-117, W.S.1977, the so-called borrowing statute, changes that rule only to the extent that we are required to apply the limitation of another state if it is determined that the "cause of action arose" in that other state. The majority recognize that both a wrongful act and a resulting injury are necessary to effect an actionable tort, and that the "law of the place where the plaintiff sustains injury to her person controls." 589 P.2d at p. 341. The record does not disclose and neither the jury nor this court could find the specific state where either the wrongful act took place or the plaintiff sustained injury to her person. An essential prerequisite to application of our borrowing statute, namely, that there be a state from which to borrow, is then lacking. However, it might be logically consistent with § 1-3-117 to hold the action barred if, by the law of *all* the states where the action *might possibly* have arisen, the action is barred. That is not the situation here, since Nebraska and Wyoming, both of which are states where the injury could have taken place, have four-year statutes and both are discovery states. My essential disagreement with both the majority and concurring opinions is with their concept that discovery of the wrongful act and resulting injury is an essential condition to the existence of an actionable tort. I would hold that discovery is of importance only in determining when a statute of limitations begins to run. I would then hold that defendant, who bears the burden of proving facts bringing the case within an applicable statute of limitations, has failed in that burden. I would therefore not dismiss the action.

The jury has specially found that defendant was infected with gonorrhea during the period April 4 to 21, 1970, which was the period during which the parties had continuing sexual relations. The first element of an actionable tort then occurred when this infected person, knowingly or with careless disregard as to his condition, had sexual relations with plaintiff without taking possible and proper precautions to prevent transmission of the disease. But only if this act resulted in communication of the disease to his partner would there be an actionable wrong. Consistently with the testimony of Dr. Beletti that "one may have the disease and not necessarily transmit it to another," [1] neither the jury nor this court could or can properly find that on a specific date and at a specific place within a period of 18 days and an area of five states,[2] the infection was transmitted to plaintiff. Nor could the jury or this court, consistently with any evidence in the cause, find that on a specific date within that 18-day period and at a specific place within an area of 11 states [3] the disease incubated and developed to a point of injury to plaintiff.

On the basis that chances of infection are not 100% and that the incubation period for the disease is variable,[4] it is possible but not very probable that transmission, incubation and injury occurred in any one of the five contact states; it is similarly possible and perhaps more probable that transmission occurred in one state and this took effect, that is, injury occurred, in another. Consistently with the proper holding of the majority that it is the law of the state of injury [5] and not of the wrongful act that determines whether a tort has been committed, it is possible that the tort could have become complete in any one of 11 states in which the plaintiff, in the company of the defendant, or separately, found herself during the 18-day sojourn between the first contact and confirmation of the existence of the disease in plaintiff in Washington on April 22.

I think it fairly obvious that our § 1–3–117 was not adopted with this type of tort in mind and it is true that in most cases the state where the action arose is not too difficult to determine. In products liability cases, for example, where the negligence occurs in one state and the product is purchased and used in another state, with injury to the user, there is a clear demarcation. But in this case, which I think we all agree is one of first impression in its interstate nature, the place of injury is obscure and all

---

1. It is said in the VD Book by Chiappa and Forish, in question and answer form, that "a man's chances of catching gonorrhea, when exposed to someone who has it are from one in five to one in twenty for each exposure. A woman's chances probably are closer to one in two." I do not find in the record anything concerning sanitary precautions that might have been taken by either of the parties.

2. Sexual acts occurred in Virginia, New York, Pennsylvania, Iowa, Nebraska, and again in New York.

3. The parties first had sexual contact in Virginia on the night of April 4–5, and had their last contact in New York on the night of April 21–22. That is the 18-day period to which I refer.

4. In the book, Venereal Disease, 3d Ed., by King and Nicol, it is said that the incubation period may vary from two to ten days, but that in most cases it is five days or less. Control of Communicable Diseases in Men, 11th Ed., gives the incubation period as "3 to 4 days, sometimes 9 days or longer." In Ch. 19, Practice of Medicine, Vol. III, it is said that "the incubation period may be prolonged, but approximately 95% of patients will develop symptoms within 2 weeks."

5. I would consider the case at bar a perfect example of the principle set forth in § 377, Restatement of Conflict of Laws, mentioned in Justice Thomas's concurring opinion that when a person causes another " 'to take a deleterious substance which takes effect within the body, the place of wrong is where the deleterious substance takes effect and not where it is administered.' " The illustration of a person sending poison to another person in another state, who there takes it, then in the course of a trip becomes ill in a second state and dies in a third, is quite pertinent to our problem. Here the poison is administered in some state that we do not know, and takes effect in either that state or another that we do not know. Nevertheless, the place of wrong is where the poison takes effect within the body. In our case, the poison could have been administered in Nebraska and taken effect in Wyoming.

we know is that at some time and place the plaintiff was injured through negligent act of the defendant. This has been found by the jury. I do not think that we can properly conclude that our legislature has said that if the action would be barred in *one* of a number of *possible* states, it is likewise barred in this state. The statute of no one state may be adopted unless it is clearly established that it was the place of injury.

Although it is the law of the place of injury that governs, the majority briefly and I think arbitrarily dismiss Wyoming as a possible place of wrong because no sexual act took place therein. If transmission of the disease through sexual intercourse is not certain and if there is an incubation period, then it is possible that transmission and planting of the infection occurred in one state and took effect in another. For example, it is entirely possible that this transmission occurred in Nebraska and took effect in Wyoming so that our state is not only the forum state of the action but is also the place of wrong. Although sexual contact occurred in Nebraska, the disease may have been transmitted through a previous contact, taking effect in Nebraska, so that was the state of injury. If the actionable tort was committed in Nebraska, conceded by the majority to be a discovery state, the statute would not start to run until the wrong was discovered. But that state is excluded by the majority only on the basis that discovery was made in either New York City or Washington, D. C., and discovery is said to be an essential element to the cause of action.

I would submit that the fact of discovery is not an essential ingredient to the existence of an actionable wrong and that the position of the majority (more clearly enunciated by Justice Thomas in his concurring opinion) is sustained neither by authority nor reason. Obviously no suit can be brought without knowledge of facts which constitute the basis of the claim, but as said in 1 Cooley on Torts, 4th Ed., § 46, p. 87, "it is the conjunction of damage and wrong that creates a tort." As said by the Supreme Court of Washington in *Highline School District No. 401, King County v.*

*Port of Seattle,* 87 Wash.2d 6, 548 P.2d 1085, 1090 (1976), "[a] cause of action accrues on the occurrence of the last element essential to the action." In the same vein is *Boulder City v. Miles,* 85 Nev. 46, 449 P.2d 1003, 1005 (1969): "A cause of action accrues only when the forces wrongfully put in motion produce an injury." Nowhere in these authorities or any that I have been able to find is it said that knowledge or discovery is an essential element of the actionable tort. The majority therefore assume a rule that has no judicial backing. While I cannot cite direct authority for my position, I believe it is consistent with principles set forth in the following citations.

In *Cantonwine v. Fehling,* Wyo., 582 P.2d 592, 596 (1978), we quoted with apparent approval this statement from the early case of *Bliler v. Boswell,* 9 Wyo. 57, 72, 59 P. 798, 803 (1899), reh. denied 9 Wyo. 57, 80, 61 P. 867:

> " '. . . A "cause of action" is defined as matter for which an action may be brought. It is said to accrue to any person when that person first comes to a right to bring an action. * * * Again, when a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, *although the claimant may be ignorant of it. * * ** ' " (Emphasis added)

I therefore conclude that it is only in the application of the statute of limitations to the remedy to be sought for an accrued cause of action that the question of discovery becomes of importance. It is only in connection with the question of limitations that we find judicial statements that the action has accrued upon "discovery" of the wrong or injury. It appears that this is a developing concept. In 2 Wood on Limitations, 4th Ed. 1916, § 276c(1), pp. 1408–1410, we find this broad statement:

> "Mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations unless there has been fraudulent concealment on the part of those invoking the benefit of the statute."

Examination of the whole section discloses no application of the discovery principle except in fraud cases. But this old rule has been changed in many states, including Wyoming, which as conceded by the majority has turned to the discovery rule. But this rule is of significance only when considering the question of when the statute of limitations begins to run. This quotation from *Gazija v. Nicholas Jerns Company,* 86 Wash.2d 215, 543 P.2d 338, 341 (1975) is particularly pertinent:

> "While in many instances damage occurs and the action accrues immediately upon the occurrence of the wrongful act, this is not always true. In circumstances where some harm is sustained, but the plaintiff is unaware of it, a literal application of the statute of limitations may result in grave injustice. Courts have avoided this consequence of older cases like *Shaw* [6] by adopting the fictions of continuing negligence, fraudulent concealment or constructive fraud. There is now a wave of modern decisions which abandon these fictions and these simply hold that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it. [Citations omitted]
>
> "*Bearing in mind that we are construing a limitations statute and not just a definition of a cause of action,* the word 'accrued' should be construed in a manner consistent with a prima facie purpose to compel the exercise of a right within a reasonable time without doing an unavoidable injustice." (Emphasis added)

When the majority include discovery as an element in the accrual, that is the commission, of a completed tort, they ignore the whole manner in which the concept of discovery has developed. *Schwartz v. Heyden Newport Chemical Corporation,* 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, 4 A.L.R.3d 814 (1963), cited by the majority, as well as the earlier case of *Schmidt v. Merchants Desp. Transp. Co.,* 270 N.Y. 287,

200 N.E. 824, 104 A.L.R. 450 (1936) are based on the proposition that "[t]he wrong is done, the right violated, and the cause of action complete when the invasion takes place," 237 N.Y.S.2d at 717, 188 N.E.2d at 144. This being the case, the statute of limitations was read literally and it was said to begin to run from the time that the injury occurred, whether known or not. This was the established rule at the time Wood wrote his treatise in 1916. The development of the discovery rule was designed to get away from this harsh result and represented a different approach, as I have quoted from *Gazija,* supra, from the resort of some courts to such fictions as continuing negligence, fraudulent concealment or constructive fraud. As the whole matter is summed up in Prosser on Torts, 4th Ed., § 30, p. 144:

> " * * * Quite recently there have been a wave of decisions meeting the issue head-on, and holding that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered injury, or by the exercise of reasonable diligence should have discovered it."

Prosser does not say and the cases applying the discovery rule do not say that previous rules of tort law are amended to include discovery as an element of the tort. The decisions are strictly confined to a construction and application of the limitations statute.

I concede that I have referred to possibilities. If those possibilities concerned whether defendant had committed an actionable tort against plaintiff, it might well be said that plaintiff did not sustain the burden of proof resting upon her. However, defendant has not contended in his brief or upon oral argument that the evidence was insufficient to support the verdict of negligence rendered by the jury. The bar of the statute of limitations is one sought to be raised by the defendant in avoidance of established liability. In such case, "[t]he party pleading the statute of limitations has the burden of proving that

---

6. *Shaw v. Rogers and Rogers,* 117 Wash. 161, 200 P. 1090 (1921).

the action is barred." *Garland v. True Temper Corporation,* 354 F.Supp. 328, 330 (D.C.W.Va.1973). See also, *Ray v. Oklahoma Furniture Mfg. Co.,* 170 Okl. 414, 40 P.2d 663 (1935); *Savannah Bank & Trust Co. v. Meldrim,* 195 Ga. 765, 25 S.E.2d 567 (1943); *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576 (1928). While indicating that the authorities are not in complete agreement, it is said in 54 C.J.S. Limitations of Actions § 386, p. 523 that

" * * * in a majority of jurisdictions it is a rule that the party pleading the statute has the burden of proof, that is, the burden of proving that the cause of action accrued more than the statutory time before the commencement of the action."

This court does not seem to have passed specifically on where the burden of proof lies in such cases, but a good many years ago it said that the defense of limitations "becomes available on demurrer only when the petition shows affirmatively that the statutory period has elapsed before the action was commenced." *Marks v. Board of Com'rs of Uinta County,* 11 Wyo. 488, 493, 72 P. 894 (1903). Rule 8(c), W.R.C.P. treats the statute as an affirmative defense. In *First Nat. Bank of Morrill v. Ford,* 30 Wyo. 110, 121, 216 P. 691, 31 A.L.R. 1441 (1923), it is said that the burden of proof is on the defendant "as to all affirmative defenses, whether they relate to the whole case or only to certain issues in the case."

Defendant does not plead the statute of limitations of any particular state, and claims only that the action is barred by the provisions of our borrowing statute, § 1–3–117, W.S.1977. In this court he relies on the District of Columbia three-year statute. I would hold that statute inapplicable on the basis already discussed, and since he has shown no other statute which governs and has not shown that the statutes of all possible places of wrong have run, he has failed in his burden. From this, it follows that the action should not be dismissed.

While other errors have been assigned by defendant, they have not been discussed by the majority and there is no point in my considering them. However, in order to indicate that this dissent has not been just an idle joust with the statute of limitations issue, I would add that while I find some merit in some of the propositions advanced for reversal, I find nothing which would result in direction of the entry of judgment for the defendant.