Sandra OLSON, Appellant (Plaintiff),

v.

**A.H. ROBINS COMPANY, INC., a Virginia corporation, Appellee (Defendant).**

**No. 84–76.**

Supreme Court of Wyoming.

March 19, 1985.

---

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, for appellant.

Michael J. Sullivan and J. Kenneth Barbe of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellee; oral argument by J. Kenneth Barbe.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This is a product liability case seeking recovery for injuries suffered because of breach of implied and express warranties, strict liability, fraudulent misrepresentation, and negligence in the manufacture, sale and distribution of the Dalkon Shield by appellee A.H. Robins Company, Inc. The district court granted summary judgment relying on the applicable statute of limitations. We affirm.

Appellant raises two issues:

"Does the discovery rule or doctrine of equitable estoppel apply in this case to toll the running of the statute of limitations?"

"Are there issues of material fact relating to the exceptions which tolled the statute of limitations in this case so as to render the entry of summary judgment in favor of the Defendant improper?"

On June 20, 1973, a Dalkon Shield, an intrauterine contraceptive device (I.U.D.), was inserted into appellant by her physician. In the summer of 1973, appellant became pregnant. She was advised that removal might cause a miscarriage. The Dalkon Shield was, therefore, left in place. During a Christmas trip to Arizona in 1973, appellant started bleeding and having other pregnancy complications. At the emergency room of the University of Arizona Medical Center she was informed of the chance of infection which might prevent further pregnancies. She was told that she would have a better chance of later pregnancies if the present pregnancy were terminated. Appellant acquiesced in that decision, and the pregnancy was terminated during December 1973.

In the summer of 1982, appellant's mother relayed information to her concerning lawsuits being brought against the manufacturer of the Dalkon Shield. During September 1982, she underwent a complete hysterectomy because of ovarian cysts and acute inflammation throughout the uterus. It is not claimed that the medical problems necessitating the hysterectomy were caused by the Dalkon Shield that had been removed nine years earlier. In October 1982, appellant received a newspaper article from her mother concerning litigation against the Dalkon Shield manufacturer. She contacted her attorney and commenced this lawsuit on March 31, 1983.

## THE DISCOVERY RULE

Appellant admits that a four-year statute of limitations applies to this case; however, she contends that there are two exceptions applicable which toll the running of the statute of limitations, i.e., the discovery rule and equitable estoppel.

"Statutes of limitation have long been a part of the jurisprudence of the United States, all its states and the State of Wyoming. They are pragmatic devices to save courts from stale claim litigation and spare citizens from having to defend when memories have faded, witnesses are unavailable by death or disappearance and evidence is lost. Statutes of limitation are arbitrary by their very nature and do not discriminate between the just and unjust claim. They are not judicially made but represent legislative and public policy controlling the right to litigate. The statutes operate against even the most meritorious of claims and courts have no right to deny their application. When considering the statute of limitations, the nature of injury, its extent, the amount of money damages involved, and social considerations, the emotional appeal the facts may have must pass to the background. *The circumstances are only significant in the bearing they may have on where the cause of action arose, when it arose and when the time expired for pursuing the applicable judicial remedy*." (Emphasis added and citations omitted.) *Duke v. Housen*, Wyo., 589 P.2d 334, 340 (1979).

■ Wyoming is a "discovery" state; therefore, the statute of limitations is triggered when the plaintiff knows or has reason to know the existence of the cause of action. *Duke v. Housen*, supra; *Banner v. Town of Dayton*, Wyo., 474 P.2d 300 (1970). The party asserting a right to an exception to the limitations has the burden of proof. *Hawkeye-Security Ins. Co. v. Apodaca*, Wyo., 524 P.2d 874 (1974). Ordinarily a negligent act and the resulting injury occur simultaneously. Occasionally the injury will not be sustained or is not known until a later date. The discovery rule provides that:

"A claim does not accrue until the injury is discovered or in the exercise of reasonable diligence should be discovered." *Hansen v. A.H. Robins, Inc.*, 113 Wisc.2d 550, 335 N.W.2d 578, 581 (1983).

When a limitation period starts to run depends upon a balancing of policy considerations

" * * * reflecting the manufacturer's interest in defending a claim before his ability to do so has deteriorated through passage of time, on the one hand, and, on the other, the injured person's interest in not being deprived of his claim before he has had a reasonable chance to assert it * * *." *Martin v. Edwards Laboratories, Division of American Hospital Supply Corp.*, 60 N.Y.2d 417, 469 N.Y. S.2d 923, 457 N.E.2d 1150 (1983). (New York is a date-of-injury jurisdiction rather than discovery.)

There have been several cases addressing the problem of the statute of limitations in Dalkon Shield injury cases. *Ballew v. A.H. Robins Co.*, 688 F.2d 1325 (11th Cir.1982), applied Georgia law in determining whether plaintiff knew or, in the exercise of reasonable diligence, should have discovered the causal connection between the injury and the alleged negligence of the company. The court, reversing a summary judgment, held that although the evidence might support a finding that appellant should have discovered the relationship between the I.U.D. and her injury, the evidence was also susceptible of showing that appellant did not know that the shield was connected to her injuries. Appellant had specifically asked her physicians if the shield had caused her pelvic infection. Her physician could not say whether or not the infection was causally related to the I.U.D. Three other doctors responded in a similar manner. Therefore, the court held that there was a genuine issue of fact as to whether appellant knew or should have discovered the relationship at the time of her first infection or at a later date when she read a newspaper article about injuries caused by the Dalkon Shield.

Other courts have reversed summary judgments where the evidence did not conclusively show that the plaintiff had the necessary knowledge. *MacMillen v. A.H. Robins Co., Inc.*, 217 Neb. 338, 348 N.W.2d 869 (1984); *Newberry v. Tarvin*, Tex.Civ. App., 594 S.W.2d 204 (1980). In *Nelson v.*

*A.H. Robins Co.*, 515 F.Supp. 623 (N.D.Cal. 1981), summary judgment was held improper because it was unclear whether the plaintiff possessed enough facts for her to draw a conclusive relationship between her infection and the I.U.D. In that case the only evidence by which she should have known of an injury was a doctor's statement telling her that the I.U.D. was removed because it was infected and causing her problems. The court held that this statement, by itself, was ambiguous and not sufficient to show that she had the necessary knowledge as a matter of law. However, in *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir.1983) the court affirmed a summary judgment where the doctor informed the plaintiff that the I.U.D. had perforated her uterus and that plaintiff testified that she knew the perforation was an abnormal event in the course of using an intrauterine device.

The primary question in the present case is whether appellant knew or should have known the cause of her injury in 1973 after becoming pregnant, having complications and a therapeutic abortion, or whether she did not discover her cause of action until 1982 from information contained in a newspaper. Appellant testified by deposition:

"Q. When did you first learn or receive information which led you to believe that the Dalkon Shield was responsible for the termination of your first pregnancy?

"A. *I believed it to be responsible at the time I was in the hospital in Tucson.*

"Q. And you attributed the problems you were having at that time to the Dalkon Shield?

"A. Yes.

"Q. And was that because of what you thought yourself or because of what Dr. Mays had told you before or something else that you heard?

"A. I believe it was a combination of everything.

"Q. Of those factors?

"A. Yes, and also the idea that one of the doctors, when I was in the examining room, asked me what kind it was and I said it was a Dalkon Shield, and *he said, 'the bug, we had a lot of problems with that.'*

"Q. *So, you knew from that time on that the Dalkon Shield was probably responsible for the termination* or what caused you to go into the hospital and ultimately the termination of the pregnancy?

"A. *I would say I believed it to be.*

"Q. And you had reason to believe it to be because of what the doctor had told you, because the doctor in Arizona and because of what Dr. Mays had told you before and because of your own personal thoughts about it, the entire circumstances of that pregnancy?

"A. Yes.

* * * * * *

"Q. Do you recall saying, 'I had a pregnancy terminated,' or something like that, 'I had my first pregnancy and it was terminated because I had a Dalkon Shield'?

"A. Yes, I believe I probably said something like that." (Emphasis added.)

Appellant contends that the doctor's statement, "the bug, we had a lot of problems with that" was directed to a group of interns and was, therefore, not adequate to establish that she was aware of a clear-cut diagnostic statement regarding the causal relationship necessary to start the running of the limitations period. It makes no difference to whom the statement was directed. It is of no import how appellant came to know significant facts. It matters only that she was aware of information that would indicate to a reasonable person the causal relationship between her injury and the I.U.D. A physician's diagnosis or other facts and circumstances must be such that a person would understand the information to such a degree that it could be asserted that the plaintiff knew or should have known the causal relationship between the allegedly defective product and her injuries. That standard was met in this case when appellant, based upon all of the facts,

the circumstances then existing, and the physician's remark about the Dalkon Shield, testified that she knew or believed that the Dalkon Shield was responsible for the termination of her first pregnancy.

It is possible that she was not aware of her legal rights until she read the newspaper ad in 1982.

"We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff." *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979).

Had appellant's injury been caused by the act of another in treating or failing to treat or in diagnosis, the statute might begin to run from that date. But here, appellant's injury was caused by appellee's product, the Dalkon Shield.

■ The statute of limitations began to run when she knew or reasonably should have known that she had suffered an injury and knew or reasonably should have known the cause of that injury. Appellant's own uncontroverted testimony shows that in December 1973 she knew of the injury and that the Dalkon Shield, a "bug, [that caused] problems" was the cause of the injury. The statute, therefore, began running in December 1973; the claim expired four years later and was, therefore, barred.

## EQUITABLE ESTOPPEL—FRAUDULENT CONCEALMENT

■ Appellant contends that A.H. Robins Company discovered that the Dalkon Shield was defective and had dangerous side effects and willfully concealed this and other information in order to deceive the purchasers and users of the Dalkon Shield, and that, therefore, A.H. Robins Company should be estopped from relying upon the statute of limitations. Equitable estoppel can result from either conduct of a party which induces the postponement of a suit or a fraudulent concealment of the facts necessary to a cause of action. *Knaysi v. A.H. Robins Co.,* 679 F.2d 1366 (11th Cir.1982); *Turner v. Turner,* Wyo., 582 P.2d 600, 602 (1978). Summary judgment is improper where a material issue of fact exists as to whether equitable estoppel is applicable. Where the defendant has superior knowledge of the facts necessary to make out a cause of action and fraudulently conceals those facts or misrepresents them to the detriment of the plaintiff, equitable estoppel applies to prevent the statute of limitations from being a defense. *Perry v. A.H. Robins Co., Inc.,* 560 F.Supp. 834 (N.D.N.Y.1983).

■ In this case the I.U.D. was inserted June 20, 1973 and the incident which gave rise to this claim occurred during December 1973. During the ensuing approximate ten-year period there was no contact between appellant and appellee A.H. Robins Company. Therefore, there were no negotiations, no offers to settle, no statements of fact or opinion, no representations upon which appellant relied, and no course of dealings between the parties that could give rise to an estoppel. There is no showing that appellant inquired of appellee concerning the Dalkon Shield, or attempted to develop factual information, or that information was concealed from appellant. It is not enough that others may have undertaken this course of action. That does not help appellant; for, had she inquired of either the doctors or appellee, additional

information might have resulted. There being no showing that information was concealed from appellant or that facts were misrepresented to her and relied upon to her detriment, she cannot prevail upon equitable estoppel.

## ISSUES OF MATERIAL FACT

 Appellant next contends the granting of summary judgment was improper because there were genuine issues of material fact. Material facts are those having legal significance. These material facts must be viewed by the trial court and by us in a light most favorable to the party opposing summary judgment and giving that party all favorable inferences that may be drawn from those facts. *Roth v. First Security Bank of Rock Springs,* Wyo., 684 P.2d 93 (1984). The material facts stated in appellant's deposition are uncontroverted. They require a holding that, as a matter of law, the statute of limitations began running and expired before this action was filed. Although the existence of equitable estoppel preventing a statute of limitations defense will generally involve questions of fact, such facts are not present in this case; and this determination, therefore, becomes a matter of law for the court. *Turner v. Turner,* supra.

In the present case summary judgment was proper because looking at the evidence in a light most favorable to appellant and relying on her testimony, it is apparent that she knew of her injury and the cause thereof in 1973. The complaint in 1983 was, therefore, as a matter of law, filed after the applicable statute of limitations had expired and was properly held barred.

Affirmed.