**John MILLS and Toni Mills, husband and wife, Appellants (Plaintiffs),**

**v.**

**William C. GARLOW, Appellee (Defendant).**

**No. 88–162.**

Supreme Court of Wyoming.

Jan. 25, 1989.

John W. Davis of Davis, Donnell, Worrall & Bancroft, P.C., Worland, for appellants.

Steven Cranfill and Margaret Sommers of McCarty & Cranfill, Cody, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is an accountant malpractice case. Appellants John Mills and Toni Mills filed suit against appellee William C. Garlow essentially alleging that appellee's negligent advice regarding a property exchange resulted in increased tax liability for appellants. The district court granted summary judgment to appellee on the basis of the statute of limitations.

We reverse.

Appellants describe the issue as:

WHETHER OR NOT THE PARK COUNTY DISTRICT COURT ERRED WHEN IT HELD THAT THE STATUTE OF LIMITATIONS RELATING TO ACCOUNTING MALPRACTICE HAD RUN UPON THE PLAINTIFFS' CLAIM AGAINST DEFENDANT.

The relevant facts in this case are not in dispute. In July 1982, appellee, as a certified public accountant, assisted appellants with a real estate transaction in which the desired result was a tax-free exchange of real property, known as a 1031 like-kind exchange.[1] Due to certain aspects of the property transaction, appellee expressed some reservations as to its tax-free nature, but he indicated to appellants that he thought it would go through. Subsequently, appellee prepared appellants' 1982 income tax return which involved the 1031 exchange. In February 1984, the parties

---

1. See 26 U.S.C. § 1031 (1982).

discontinued their business relationship, and appellants retained a new accountant.

In March of 1985, appellants were notified by the Internal Revenue Service (IRS) that their 1982 tax return was to be examined with respect to the property exchange. Appellant Toni Mills met with the examining officer on April 4, 1985, and on July 10, 1985, appellants received a form 4549, Income Tax Examination Changes, indicating the examining officer's proposed disallowance of tax-free (1031) treatment for the property exchange and asserting a corresponding tax deficiency of $6,600 for the year 1982. Pursuant to IRS procedures, appellants were given the choice of either agreeing with the proposed changes or, alternatively, pursuing a protest. During July and August of 1985, appellants contacted both appellee and their current accountant regarding the asserted deficiency. Appellants' current accountant indicated they probably owed the tax. Appellee, however, advised that he believed there were grounds for contesting the proposed deficiency. He further advised that appellants should not agree to the deficiency and stated that he would pursue an internal appeal within the IRS on their behalf.

On August 30, 1985, appellee filed a protest/appeal of the findings of the examining officer with the district director of the IRS. On December 4, 1986, an appeals officer notified appellee that the appeal was denied and requested that appellee have appellants sign and return an agreement form (form 870) by December 15, 1986, which agreement was signed and returned by said date. The IRS notified appellants on March 9, 1987, that, on the basis of the agreement, the case was closed, and on April 13, 1987, appellants were billed for the additional tax due plus interest. Appellants initiated the present action by filing a complaint in the district court on September 30, 1987. By decision letter and order, the district court entered summary judgment in favor of appellee upon a finding that the applicable statute of limitations had run in relation to appellants' cause of action. This appeal followed.

The parties agree that the controlling statute of limitations in this case is Wyo. Stat. § 1–3–107 (1977), which provides in pertinent part:

(a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:

(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

(A) Not reasonably discoverable within a two (2) year period; or

(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

▪ Wyoming is a "discovery" state, which means that the statute of limitations is not triggered until the plaintiff knows or has reason to know the existence of the cause of action. *Olson v. A.H. Robins Company, Inc.*, 696 P.2d 1294, 1297 (Wyo. 1985); *Duke v. Housen*, 589 P.2d 334 (Wyo. 1979), *cert. denied* 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). In this case we must determine the question, novel to this jurisdiction, of when a taxpayer, whose tax return has been challenged by the IRS, knows or has reason to know that he has a cause of action against his accountant. Appellants argue that the district court erred in concluding that the statute of limitations began to run in July/August 1985 when appellants received notice of the proposed changes in their 1982 income tax. We agree.

▪ Ordinarily the question of whether or not a cause of action is barred by a statute of limitations is a mixed question of law and fact, but where the facts are not in dispute, as here, the question is one of law. 54 C.J.S., *Limitations of Actions* § 301 (1987), and cases cited therein. Additionally, we have stated that the determination of when a limitation period commences in-

volves a balancing of policy considerations. *Olson,* 696 P.2d at 1297. In a summary judgment context, where the facts are not in dispute and the question is one of law, we accord no special deference to and are not bound by the decision of the trial court. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255 (Wyo.1988); *Farr v. Link,* 746 P.2d 431 (Wyo.1987).

Resolution of the issue presented requires that we look to cases from other jurisdictions where the question has arisen and also to the particular procedures employed by the IRS in determining and assessing tax deficiencies. The number of cases addressing alleged accountant malpractice and later developing tax difficulties in relation to statutes of limitation is remarkably limited, and the decisions are not in harmony. Some courts have held, as appellee here contends, that the statute starts to run upon the first indication from the IRS of a disagreement with the taxpayer's return. *See Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A.2d 130 (Del.Supr.1974) (applying the "discovery" rule, the court held that, upon receipt of the first notice of an alleged deficiency from the IRS, the statute began to run); and *Brower v. Davidson, Deckert, Schutter & Glassman, P.C.,* 686 S.W.2d 1 (Mo. App.1984) (statute began to run upon issuance of the examining agent's notice of a proposed deficiency).

Other courts have held that the statute of limitations does not begin to run until the issuance of the statutory notice of deficiency,[2] a formal notice of deficiency issued by the IRS at a later point in the deficiency procedure. Illustrative of this approach is *Feldman v. Granger,* 255 Md. 288, 257 A.2d 421 (Ct.App.1969). That case involved a malpractice action against an accounting firm for the late filing of a tax document with the IRS, resulting in an increased tax liability for the taxpayers. The *Feldman* court, although affirming the lower court's grant of summary judgment in favor of the defendants under the facts of that case, applied the discovery rule and concluded that the statute of limitations began to run upon the receipt of the statutory notice of deficiency. The court noted that the taxpayers in that case had known for more than three and one-half years that the IRS disagreed with their position, and the court stated that a reasonable and prudent man in their position would have known or should have known that he had sustained harm on the date of the notice of deficiency, if not before. Although the court in *Feldman* seemed to leave open the possibility that, in some cases, the statute could start to run prior to receipt of the statutory notice, it reaffirmed its *Feldman* holding in *Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (Ct.App.1972). *See also Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (Ct. App.1974) (statute commences upon notice of assessment of deficiency). *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985), and *Atkins v. Crosland,* 417 S.W.2d 150, 26 A.L.R.3d 1431 (Tex.1967), reached the same result on grounds other than the discovery rule, holding that the statute does not begin to run until a tax deficiency is assessed because there is no injury to the plaintiff prior to that time; i.e., there is not a completed tort until the IRS assesses a deficiency.

In determining which of the two approaches indicated by the above cases is preferable, a brief review of IRS procedures for examination of tax returns and assessment of deficiencies is helpful. Certain federal tax returns are selected for examination or audit, and the examination is generally done by examiners in the district offices of the IRS. 20 Fed.Proc., L.Ed., *Internal Revenue* § 48:305 (1983). At the conclusion of the examination, the taxpayer is sent a report of the examiner's findings, indicating any proposed adjust-

---

**2.** 26 U.S.C. § 6212 (1982) authorizes the sending of the notice of deficiency upon the determination that there is a deficiency in tax. *See* 20 Fed.Proc., L.Ed., *Internal Revenue* § 48:440 (1983). The notice is known as the "90–day letter" because, pursuant to 26 U.S.C. § 6213 (1982), the IRS may not initiate collection actions for ninety days after the notice, within which time the taxpayer may petition the Tax Court for a redetermination. 20 Fed.Proc., *supra* at §§ 48:440 and 48:463.

ments in tax liability. *Id.* at § 48:389. At this point the taxpayer is given the opportunity to agree with the findings of the examiner by signing a form agreement (form 870) or, alternatively, the taxpayer is informed of his appeal rights if he does not agree. *Id.* If the taxpayer signs the agreement form, he thereby waives the required statutory notice of deficiency pursuant to 26 U.S.C. § 6212 (1982) (the ninety-day letter) and the corresponding prohibition on collection for ninety days under 26 U.S.C. § 6213 (1982), and the taxpayer is precluded from litigating the proposed deficiency in Tax Court. J. Chommie, *Federal Income Taxation* § 295 (2d ed. 1973). If the taxpayer does not agree with the examiner's proposed findings, the findings will be reviewed in the district office, and the taxpayer will be sent a "30–day letter" instructing him that he has thirty days to file a protest. 20 Fed.Proc., *supra* at § 48:392. If the taxpayer fails to respond within the thirty days, a notice of deficiency will be issued. *Id.* at § 48:393. If the taxpayer timely files a protest, he will be accorded an appeals office conference. *Id.* at §§ 48:392 and 48:406. The appeals office has broader negotiation and settlement authority than does the district office. *Id.* at §§ 48:401 and 48:411. If a settlement is reached, the taxpayer will again be requested to sign the agreement form 870. *Id.* at § 48:412. A determination by the appeals office, however, is final insofar as the taxpayer's appeal rights within the IRS, and if the taxpayer continues to disagree, the statutory notice of deficiency will be sent giving the taxpayer ninety days to file a petition in the Tax Court before collection actions are begun. *Id.* at §§ 48:440 and 48:463. *See also* J. Chommie, *supra* at § 295, for an overview of the described procedure.

Thus, it can be seen that the preliminary findings of the examiner are merely proposed findings, subject to review and negotiation prior to any determination of a deficiency, unless the taxpayer agrees with

such findings or fails to pursue the internal review provided by the IRS. An agreement by the taxpayer with the proposed adjustment at any point in this procedure results in a binding determination of tax liability upon which enforcement actions may immediately commence and precludes the necessity for the statutory notice of deficiency. It would seem, therefore, given the provisional nature of the examining officer's proposed deficiency, that a reasonable taxpayer would not know or have reason to know that he had a cause of action against his accountant until such time as the notice of deficiency issues or, alternatively, when the taxpayer has indicated his agreement with the IRS. We conclude that IRS procedures support a policy of starting the statute of limitations at the time of the statutory notice of deficiency or, in the alternative, at the equivalent time of taxpayer agreement with the IRS, precluding the otherwise required notice.

Other policy considerations support this approach. Use of the date of the notice of deficiency as the point of "discovery," although somewhat arbitrary, at least has the advantage of providing some certainty. In addition, commencing the statute at this point would not abrogate the policy underlying statutes of limitation of preventing stale claims because, pursuant to 26 U.S.C. § 6501(a) (1982), the IRS must file any notice of deficiency and assess the deficiency within three years from the date the tax return was filed, unless both the taxpayer and the IRS consent in writing to extend the assessment period. 26 U.S.C. § 6501(c)(4) (1982). *See also* 20 Fed.Proc., *supra* at §§ 48:429 and 48:441.[3] This interplay of the IRS statute of limitations with a state statute limiting actions against accountants was noted by the Texas Supreme Court in *Atkins*, 417 S.W.2d at 154.

Although we do not know how many adjustments proposed by IRS examiners are reversed or altered upon further review, we think it is a better policy to dis-

---

**3.** In the instant case, appellant Toni Mills signed an agreement in October of 1985 extending or waiving the IRS statute of limitations. This extension enabled the parties to continue the review procedure beyond the three-year period provided by § 6501(a), which otherwise would have expired on April 15, 1986. *See* 26 U.S.C. § 6501(b)(1) (1982).

courage the filing of lawsuits until such time as the likelihood of accountant error is established by the IRS at some point beyond the initial examiner's preliminary conclusions. We anticipate that this approach would also comport with the response of the average taxpayer to an examiner's proposed adjustments. The first step by such a taxpayer, as in the instant case, is likely to be the contacting of the accountant for assistance in sorting out his tax difficulties with the IRS. This effort would be frustrated if the taxpayer was required to immediately file a lawsuit against the accountant.

For the above reasons, we adopt what we perceive to be the better rule and hold that the statute of limitations in an accountant malpractice case involving increased tax liability begins to run when the taxpayer receives the statutory notice of deficiency, § 6212, or at the equivalent time when the taxpayer registers his agreement with the IRS by signing the agreement form 870. In the instant case, no notice of deficiency was sent because, after the December 4, 1986, adverse decision of the appeals officer, appellants signed and submitted the agreement form by December 15, 1986. Accordingly, the two-year statute of limitations provided in § 1–3–107 began to run on December 15, 1986, and this suit, filed September 30, 1987, was not time barred by the statute.[4]

Reversed and remanded for further proceedings.

---

**4.** Appellants additionally contend that the "course of treatment" rule adopted by this Court in medical malpractice cases should be applicable to the statute of limitations as applied to accountants. See *Metzger v. Kalke,* 709 P.2d 414 (Wyo.1985). This contention is premised on appellee's continued representation of appellants in their dispute with the IRS. Our holding in this case, however, precludes the necessity of addressing this argument.