IN the MATTER OF the ESTATE OF Ervin C. ERLIEN, Deceased:

OLD REPUBLIC SURETY COMPANY Appellant,

v.

Nancy ERLIEN, Robert Erlien and Cathy Erlien-Fendler, Beneficiaries, Respondents.

Court of Appeals

*No. 93–1909. Submitted on briefs March 1, 1994.—Decided December 28, 1994.*

(Also reported in 527 N.W.2d 389.)

For the appellant the cause was submitted on the briefs of *Thomas N. Klug* and *Lynn A. Ludke* of *Borgelt, Powell, Peterson & Frauen, S.C.*, of Milwaukee.

For the respondents the cause was submitted on the briefs of *Barry M. Cymerman* and *Marilee S. Shepard* of *Phillips, Donohue & Cymerman, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Old Republic Surety Company appeals from a judgment for a testamentary account surcharge in the sum of $161,464.45. Old Republic, successor surety for the testamentary trustees, asserts that the trial court erred as a matter of law when it surcharged Old Republic because Old Republic bonded the co-trustee, Gloria Erlien (Erlien), solely in her role as trustee and any errant appropriation of estate property occurred while she acted as personal representative. While we agree that Old Republic bonded Erlien only in her role as co-trustee, we also determine that Erlien (as well as Daniel Stocking, her co-trustee) may have breached a concomitant duty to the trust beneficiaries to enforce claims against Erlien as personal representative of the estate. Thus, we reverse and remand to the trial court for further fact-finding on the question of which, if not both, of the two new trusts created under Ervin C. Erlien's will did the co-trustees receive letters of trust and thereby assume a duty to enforce claims on behalf of the respective trust beneficiaries.

405

# I. BACKGROUND

The controversy in this case originally arose following an order filed by the probate court requiring the co-trustees to show cause why they failed to file a trustee's inventory and accounts as required by law.[1] The parties have stipulated to most of the dispositive facts.

Ervin C. Erlien died testate on April 30, 1980. His will designated his wife, Gloria P. Erlien, as personal representative. Additionally, the will, in part, established two trusts: the Gloria P. Erlien Trust (the "Marital Trust") and the Ervin C. Erlien Family Trust (the "Family Trust").

The Marital Trust was to consist of the greater of $250,000, or property equal to a marital deduction of fifty percent of Ervin C. Erlien's adjusted gross estate for federal estate tax purposes, minus the value for federal estate tax purposes of all items in the gross estate that qualified for the marital deduction and that passed to Gloria Erlien outside of the terms of the trust.[2] Erlien was to be the sole beneficiary of the Marital Trust. Additionally, Erlien was to have unfettered discretion in receiving from the Marital Trust "such sum from the principal as she may from time to time

---

[1] Section 863.35, STATS. In 1966, the author of this opinion, while presiding in probate and in response to public hue and cry about perceived abuses in the probate courts, established a system of inquiry into dormant estates and delinquent guardianships, conservatorships, and trusts. The fiduciaries responsible for any failures of legal compliance were identified and either given specific directions to effect compliance or were discharged and successors appointed. The initial inquiry was directed to 2,400 estates, retroactive to 1946.

[2] This section of the will was enacted to facilitate the maximum marital deduction available to the estate under federal income tax laws.

request in writing." The will stated that it was Ervin Erlien's "intention that no limitation be placed on [Gloria Erlien] as to either the amount of or reason for such invasion of principal."

The Family Trust was to consist of the balance of the estate that remained after the establishment of the Marital Trust. The beneficiaries of the Family Trust were Erlien, as a life beneficiary, and then the Erlien children and/or their surviving issue.

The will did not designate a trustee for the Marital Trust; however, it did designate three co-trustees for the Family Trust: Gloria Erlien, the Marshall and Ilsley Bank, and Milton Dizack. The bank and Dizack declined to act as trustees. The court later appointed Erlien and attorney Daniel Stocking as co-trustees, but the court did not designate for which trust they were appointed.

Erlien served in her role as personal representative from July 16, 1980, to August 27, 1982. She was not bonded in her role as personal representative. On April 26, 1982, letters of trust were issued to Erlien and Stocking as co-trustees, and the probate court issued a $200,000 bond for the co-trustees, naming Erlien and Stocking as principals and Northwest National Insurance Company as the surety. The court did not specify for which trust the co-trustee and surety were bonded. Old Republic Surety Company later became the successor surety to the bond. Also on April 26, 1982, Erlien filed the probate estate final account, indicating a net balance for distribution of $203,252.79.

On August 25, 1982, the probate court entered a final judgment that assigned the entire probate estate to the Marital Trust. Also on that day, the co-trustees filed a receipt acknowledging payment and receipt of everything to which the trustees were entitled to from

the estate. On August 27, the court discharged Erlien from her role as personal representative for the estate.

The case remained dormant until November 1985, when a deputy register in probate notified the co-trustees that they had not filed accounts or an inventory for the trust from 1982 to 1984. The notification directed the co-trustees to file the documents within thirty days or risk removal as co-trustees for failing to discharge their duties. The deputy, however, took no further action. Then, on May 16, 1991, the probate court ordered the co-trustees to show cause why they should not be removed for failing to file accounts and an inventory for the years 1982 to 1991. After a hearing, the court removed the co-trustees and appointed attorney Sidney Gray as successor trustee for both trusts.

From these proceedings the following stipulated facts were derived. The final judgment, entered on August 25, 1982, erroneously assigned the entire probate estate to the Marital Trust, rather than the Family Trust. The parties reasoned that because the amount of marital deduction property that passed to Erlien outside of the estate exceeded the minimum amount to realize the maximum marital deduction, nothing should have passed under the terms of the will to the Marital Trust, and instead the entire net proceeds of the estate should have been distributed to the Family Trust. Neither trust, however, was funded. By the time the final judgment was entered, Erlien had transferred almost all of the estate property to herself, individually. Thus, when the final judgment was entered, Erlien held personal assets of $323,631, while the estate retained only $9,709.69. The parties stipulated that the amount that should have been available to the Family Trust was $201,511.41.

In a memorandum decision, the trial court concluded that the final judgment erroneously directed distribution of the estate to the Marital Trust instead of the Family Trust.[3] The court found that the co-trustees failed in their duty to preserve and administer the Family Trust. The court additionally concluded that Erlien, at the time of her appointment and qualification as co-trustee, became trustee of a constructive trust composed of all trust property in her individual possession. Further, the court concluded that the co-trustees failed in their fiduciary duties to administer the trust, to use reasonable care and skill to preserve the trust property, and to comply with the terms of the trust; and that the loss to the Family Trust occurred after Erlien was discharged in her role as personal representative. Finally, because the bond did not state which trust the co-trustees were bonded for, and because, according to the court, the only trust that was created was the constructive trust that arose by operation of law, the court concluded that Old Republic as successor surety should be surcharged, due to the breach of duty by the co-trustees, in the amount of $201,511.41—the value of the estate that should have been distributed to the Family Trust. In a supplemental decision, the court reduced this amount by the net proceeds of the sale of a duplex, thereby reaching a final surcharge against Old Republic for $161,464.45. Old Republic appeals.

---

[3] The trial court concluded that this error was caused by the "ignorance and stupidity" of the attorney for the estate, Daniel Stocking, and that it would not "allow a glaring error by an incompetent attorney to subvert the intent of" Ervin C. Erlien.

## II. ANALYSIS

Resolution of this appeal requires us to apply the law to conceded and stipulated facts. Therefore, the appeal presents a legal issue that we decide independently of the trial court's conclusions. *See Employers Ins. of Wausau v. Pelczynski,* 153 Wis. 2d 303, 307, 451 N.W.2d 300, 301 (Ct. App. 1989). The crux of this case focuses on the duties Erlien and Stocking owed in their respective roles, and the point at which these duties accrued.

The difficulty in resolving this case arises out of the intermingling of the various roles created in the disposition of Ervin C. Erlien's estate. Stocking was both attorney for the estate and co-trustee; Erlien was personal representative, co-trustee, and beneficiary. It is very clear from the record that neither individual clearly understood the duties of the positions that they held. Stocking, as attorney for the estate, erroneously drafted the documents that assigned the entirety of the probate estate to the Marital Trust, and then, as co-trustee, foisted all legal responsibility for administering the trusts onto Erlien, an individual with no legal training or experience in overseeing testamentary trusts. As her deposition testimony in 1991 confirms, Erlien was not aware of the distinction between her positions as personal representative for her husband's estate and as co-trustee of the testamentary trusts created by her husband's will.

While a complete explication of all of the duties of a personal representative is unnecessary for the resolu-

tion of this appeal,[4] we do note that § 857.03, STATS., sets forth the statutory duties of a personal representative.[5] The primary duties, however, are to manage the affairs of the decedent, to ensure the decedent's creditors are satisfied, and to distribute the residue of the estate according to the will of the decedent. *See McKeigue v. Chicago & N.W. Ry. Co.*, 130 Wis. 543, 546-47, 110 N.W. 384, 385 (1907) (holding administrator, i.e., personal representative, to similar duties as those of trustees). These duties relate to the beneficiaries of the estate as well as to the creditors of the decedent. *See Lecic v. The Lane Co.*, 104 Wis. 2d 592, 608, 312 N.W.2d 773, 780 (1981). Personal representatives are required to carry out these duties "in good faith and with reasonable care." *Id.* at 608-09, 312 N.W.2d at 781.

---

[4] For a general discussion of the duties of a personal representative see 1 JAMES B. MACDONALD, WISCONSIN PROBATE LAW AND PRACTICE §§ 7:38-7:42 at 452-61 (Laurel P. Lester ed., 8th ed. 1994).

[5] Section 857.03, STATS., provides in part:

**857.03 Powers and duties of personal representative; in general. (1)** The personal representative shall collect, inventory and possess all the decedent's estate; collect all income and rent from decedent's estate; manage the estate and, when reasonable, maintain in force or purchase casualty and liability insurance; contest all claims except claims which the personal representative believes are valid; pay and discharge out of the estate all expenses of administration, taxes, charges, claims allowed by the court, or such payment on claims as directed by the court; render accurate accounts; make distribution and do any other things directed by the court or required by law.

The relevant portions of the current probate statutes cited in this case are identical to those (except for gender-neutral language changes) in force when the estate was first in probate in 1981-82; therefore, all citations are to current statutory language.

411

Old Republic argues that Erlien converted the estate property for her own use while acting as personal representative, a position for which Old Republic was not the surety. Thus, Old Republic argues, Erlien breached her duty to distribute the residue of the estate according to the will of the decedent, a duty solely owed by the personal representative, and, therefore, Old Republic cannot be surcharged for a breach of duty of a position for which it was not surety. *See McKeigue,* 130 Wis. at 546-47, 110 N.W. at 385.

The Wisconsin Supreme Court decisions in *Thompson's Will v. Thompson,* 212 Wis. 172, 248 N.W. 167 (1933), and *Newcomb v. Ingram,* 211 Wis. 88, 243 N.W. 209 (1932), *modified,* 211 Wis. 88, 248 N.W. 171 (1933), support this proposition.[6] In *Thompson,* the positions of executor and trustee of an estate were held by the same person, Benjamin Edgerton. Edgerton was bonded in both roles, but had different sureties. *Thompson,* 212 Wis. at 174-75, 248 N.W. at 168. Dur-

---

[6] We also note Professors Austin W. Scott and William F. Fratcher's commentary on this issue:

> Where a person is named in a will as both executor and trustee, the sureties on his bond as executor are not liable for his failure to perform his duties as trustee. Conversely, the sureties on his bond as trustee are not liable for his failure to perform his duties as executor. It becomes important therefore to determine in what capacity he is acting when he commits a breach of duty. There is some authority to the effect that the liability of the sureties on his bond as executor ceases if he has in fact entered upon the performance of his duties as trustee. By the great weight of authority, however, it is held that the liability of the sureties on his bond as executor continues until he has openly and notoriously entered upon the performance of his duties as trustee, and that it is not enough that his duties as executor have in fact been performed.

1 AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 6.2 at 75-76 (4th ed., 1987).

ing the time Edgerton was responsible for managing the estate and the trust, a large portion of the property dissipated. *Id.* The supreme court declared that in order to determine which surety was liable for the testamentary account surcharge it was first necessary to determine when Edgerton's breaches of trust occurred. *Id.* at 182, 248 N.W. at 170. The court stated:

> If the estate had in fact been dissipated by the executor and only a part came into the hands of Edgerton as trustee, the liability of the trustee may be affected accordingly. Edgerton and his surety could be liable for the dissipation of assets but once. If the assets were dissipated while Edgerton was executor, Edgerton and his surety would not be liable for his breach of trust as executor and also liable for the same breach of trust on the same transaction as trustee. If the entire estate was turned over to the trustee, then the executor and his surety would be discharged and the liability for breach of trust, if any, would be the liability of the trustee and his surety.

*Id.* at 182, 248 N.W. at 170-71.

Similarly, in *Newcomb*, Charles Ingram was both executor and trustee of an estate. *Newcomb,* 211 Wis. at 94, 243 N.W. at 210. Ingram received three bonds, each from successive sureties: the first for his role as executor; the second for his role as trustee; and the third was for both roles. *Id.* at 94-95, 243 N.W. at 210-11. After an accounting, Ingram was adjudged liable to pay for the dissipated estate. *Id.* at 94, 243 N.W. at 210. The supreme court determined that Ingram's sureties were not liable for "defaults that occurred previous to the execution of [their] bond[s]."[7] *Id.* at 105, 243 N.W.

---

[7] The supreme court, on rehearing *Newcomb*, slightly modified its holding as to when the trustee's duties and liabilities

413

at 214. Thus, as in *Thompson,* the court determined that the issue of when the defaults or breaches of duty occurred was the primary factor in determining which surety was liable for the account surcharge.

In applying the above rule to the present case, we note that we are bound by the trial court's determination of historical facts unless they are clearly erroneous. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983); § 805.17(2), STATS. After reviewing the materials presented by the parties, the trial court found that the loss to the estate occurred before Erlien was discharged in her role as personal representative. We can find nothing in the record that would lead us to conclude that the trial court's findings were clearly erroneous. *Id.* At the time of Erlien's final account as personal representative, the estate had assets of $203,252.79; however, when the final judgment on the estate was entered, Erlien had personal assets of $323,631, while the estate retained only $9,709.69. Thus, the loss to the estate occurred before Erlien was discharged as personal representative.

Accordingly, we conclude that Erlien breached her duty as personal representative when she converted the estate funds to her personal use. Consequently, she, or her surety had she been bonded as a personal representative, would be liable for any amount of the residue of the estate that she failed to distribute

---

began: "[The trustee] accepted the letters [of trust], and must be deemed to have acted as trustee from that time on, and his liability as trustee for the parties began at that date." *Newcomb v. Ingram,* 211 Wis. 88, 113, 248 N.W. 171, 175 (1933).

according to the will of the decedent. *McKeigue*, 130 Wis. 546-47, 110 N.W. at 385.

Our resolution of this case does not end here, however, because the beneficiaries argue that Erlien also breached a concomitant duty as trustee, and thus Old Republic is liable for the surcharge as surety to the trustee. The duties of a trustee are similar to those of the personal representative.[8] *See McKeigue,* 130 Wis. at 546, 110 N.W. at 385. Wisconsin courts have repeatedly expressed that a trustee is required to "act as a prudent and provident person would act" while managing a trust. *Sensenbrenner v. Sensenbrenner,* 76 Wis. 2d 625, 635, 252 N.W.2d 47, 51 (1977). The reason for this standard is well-documented:

> A trustee occupies a position of peculiar responsibility. A trustee is selected because of confidence in his diligence, prudence, and absolute fidelity, as well as in his ability to so administer the trust as to protect those who, through infancy or other cause, are not able to protect their own interests. The performance of the duties of a trustee requires the exercise of a high degree of fidelity, vigilance, and ability. . . .
>
> Wisconsin early adopted the rule that trustees must exercise more than ordinary diligence and vigilance in the management of a trust estate. . . . A trustee must also exercise diligence, prudence, and absolute fidelity.

*Id.* (quoting *Estate of Allis,* 191 Wis. 23, 29, 209 N.W. 945, 947 (1926)).

The beneficiaries of the Family Trust argue that a trustee also has a duty to the beneficiary to enforce any claim that the trustee holds on behalf of the trust

---

[8] *See generally* 1 MacDonald, *supra* note 4, §§ 18:9 & 18:11, at 114-118, 120-21.

estate, or to redress a breach committed by a personal representative. In support of this proposition, they cite the RESTATEMENT (SECOND) OF TRUSTS § 177 (1959), which provides: "The trustee is under a duty to the beneficiary to take reasonable steps to realize on claims which he holds in trust." The Comment following § 177 reads:

> The trustee is under a duty to the beneficiary to take reasonable steps to enforce any claim which he holds as trustee against predecessor trustees . . . or in the case of a testamentary trust against the executors of the estate, to compel them to transfer to him as trustee property which they are under a duty to transfer, or to redress any breach of duty committed by them.

RESTATEMENT (SECOND) OF TRUSTS § 177 cmt. a (1959).

Several jurisdictions have concluded that this duty also applies in cases where the position of trustee and personal representative are held by the same entity or person. Thus, in *In re First National Bank of Mansfield,* 307 N.E.2d 23 (Ohio 1974), the Ohio Supreme Court determined that a trustee bank had a duty to the beneficiaries of a testamentary trust upon taking over property from an executor to " 'examine the property tendered and see whether it is that which he ought to receive.' " *Id.* at 63 (citation omitted). Further, the court stated that the bank "as trustee, was under an unqualified duty, upon acceptance of the trust property from itself, as executor, to take action to recover for the benefit of the beneficiaries that portion of the trust property which had been wrongfully disbursed by the bank while acting as executor." *Id.* at 66; *see also In re Irrevocable Inter Vivos Trust Established by R. R. Kemske by Trust Agreement Dated October 24, 1969,* 305 N.W.2d 755, 762 (Minn. 1981) (stating "fact that a bank

serves in a dual capacity, and as trustee may have to question its own conduct as executor, does not alter the trustee's duty to its beneficiaries"); *Bullis v. DuPage Trust Co.,* 391 N.E.2d 227, 231 (Ill. App. Ct. 1979) (holding trustee under duty to take "reasonable steps" to enforce claims against executor where trustee and executor roles are filled by same trust company).

Whether trustees in Wisconsin have such a duty is a question of first impression before this court. Therefore, we look to the statutes governing trustees in order to reach our conclusion. Section 701.16(1), STATS., provides, in part: "A trustee who is named or whose appointment is provided for in a will derives the authority to carry out the trust from the will and assumes the office of trustee upon the issuance of letters of trust by the court as provided in s. 856.29." Section 856.29, STATS., states:

> **856.29 Letters issued to trustee of testamentary trust.** If the will of the decedent provides for a testamentary trust, letters of trust shall be issued to the trustee upon admission of the will to probate at the same time that letters are granted to the personal representative, unless the court otherwise directs. Upon issuance of letters of trust, the trustee shall continue to be interested in the estate, and beneficiaries in the testamentary trust shall cease to be interested in the estate except under s. 851.21(3). This section shall apply to wills admitted to informal probate and letters issued in informal administrations.

By reading these statutes in conjunction with each other, we conclude that the beneficiaries to a testamentary trust cease to be "interested in the estate" after the issuance of letters of trust and, therefore, the trustees,

417

who "continue to be interested in the estate," become the primary parties in a position to protect the assets of the trust for the beneficiaries. Accordingly, because of this unique position, it flows that the trustee, once named and upon assumption of office, does have a duty to the beneficiaries of the trust to ensure that the personal representative of the estate transfers to the trustee all property to which the trustee, and therefore the trust beneficiaries, are entitled. Section 856.29, STATS. Since this duty arises upon assumption of the office of trustee, once letters of trust are issued by the court, *see* § 701.16(1),[9] the trustee has a duty to take "reasonable steps to realize on claims which [the trustee] holds in trust." RESTATEMENT (SECOND) OF TRUSTS § 177.

Accordingly, we conclude that in all cases, even where the roles of personal representative and trustee are held by the same person or entity, the trustee has a duty to the beneficiaries of the trust to take reasonable steps to enforce all claims the trust has against the personal representative. Failure to take reasonable steps to enforce such claims is a breach of the trustee's duty and may lead to a surcharge against the trustee in the amount of the estate property that the personal representative should have transferred to the trust.

### III. APPLICATION

Applying the above rules of law to the facts in this case is difficult because of both the overlapping roles of each of the parties[10] and the ambiguous manner in

---

[9] *See also Newcomb*, 211 Wis. at 113, 248 N.W. at 175 (duties of trustees arise upon issuance of letters of trust).

[10] One set of commentators has noted that:

which the trust documents were drafted. We can find nothing in the record that clarifies which trust is being referred to in the documents. On April 26, 1982, Erlien, as personal representative of the estate, petitioned to the probate court "that Letters of Trust be issued appointing Gloria P. Erlien and Daniel E. Stocking as Co-trustees of the Trust created under the Last Will and Testament of Ervin C. Erlien." On that same day, the court ordered that: "Letters of trust be issued to GLORIA P. ERLIEN and DANIEL A. STOCKING." The bond issued by the court stated: "The condition of this obligation is such that if the principal shall perform his duties as Co-trustees then this obligation shall be void, otherwise it shall remain in full force and effect." Finally, the letters of trust do not state for which trust Erlien and Stocking were named as co-trustees. Thus, while Erlien and Stocking assumed the office of co-trustee when the letters of trust were issued on April 26, 1982, *see* § 701.16(1), STATS., it is unclear for which of the two trusts mentioned in the will they became co-trustees. The language of the will further complicates the question because it did not name trust-

---

> Where the same person is executor and trustee under a will, or identical persons are to act in each capacity, it often becomes difficult to ascertain whether at a given time the trust has been set up or whether the fiduciaries were still acting in the capacity of executors. The normal orderly procedure would seem to be that the executor account and be discharged, and that thereafter the same party qualify as trustee and begin the trust administration. This would make the break between administration as executor and as trustee distinct.

GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES, § 583 at 364-65 (Rev. 2d ed., 1980) (footnotes omitted). Unfortunately, we do not have such a "distinct" break in this case.

ees for the Marital Trust, but did name Erlien as one of the trustees of the Family Trust.

On August 25, 1982, the final settlement was entered and it provided in part that: "The property is assigned to the Gloria P. Erlien Trust according to the provisions of Article Third of decedent's Last Will and Testament." Thus, while the parties now stipulate that the entire testamentary estate should have been assigned to the Family Trust instead of the Marital Trust under the final settlement, in fact the final judgment created only the Marital Trust.

Further, the will placed no limitation on Erlien's ability, as beneficiary of the Marital Trust, to invade the principal of the Marital Trust. Thus, even though Erlien, as personal representative, converted the estate funds to her private use instead of turning them over to herself and Stocking in their role as co-trustees, if Erlien (and Stocking) only assumed the office of co-trustee of the Marital Trust, rather than the Family Estate, she was fully entitled to invade the entirety of the estate that was assigned to the Marital Trust. Accordingly, while we conclude that a trustee does have a duty to enforce claims against a personal representative, if Erlien assumed only the role of co-trustee of the Marital Trust, she need not, as co-trustee, have enforced a claim against herself as personal representative for the benefit of herself as sole beneficiary of the Marital Trust. She already had received the benefit of her trust by previously converting the estate property to her personal use while in the role as personal representative.

If, however, at the time the letters of trust were issued, the parties contemplated that the Family Trust would be created and assigned property in the final

settlement, the co-trustees of the Family Trust would have a duty to the beneficiaries of the Family Trust, i.e., the Erlien children, to enforce any claim against the personal representative.

While the trial court did make findings that the testamentary estate should have been assigned to the Family Trust instead of the Marital Trust, we are presented with nothing in the record that would allow us to determine which of the two trusts Erlien and Stocking were issued letters of trust. Therefore, we must reverse and remand this matter to the trial court for further fact-finding on the issue of which, if not both, of the trusts the parties received letters of trust for on April 26, 1982.[11]

If the court finds that the letters of trust were issued for the co-trusteeship of the Family Trust, then the co-trustees, Erlien and Stocking, had a duty to the beneficiaries of the Family Trust to enforce a claim against Erlien as personal representative. Old Republic, as successor surety for the co-trustees, would then be liable for the surcharge due to the breach of the co-trustees' duties. We also note that Old Republic could then recoup from Erlien the money she received in violation of her duties as trustee, and thereby ensure that Erlien would not, as a beneficiary of the Family Trust, once again receive through the surcharge the benefit of estate property that she had already received as personal representative.

---

[11] Because we reverse on other grounds, we do not address Old Republic's assertion that the trial court erred when it created a constructive trust. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

Additionally, if the trial court determines that the letters of trust were issued for the Family Trust, the court shall also determine Erlien's ultimate interest in the Family Trust, *vis a vis*, the other beneficiaries (the Erlien children) so that she does not receive the benefit of the surcharge. The court shall also determine the respective liabilities of Erlien and Stocking for each of their failures in their duty as co-trustees.

[11]

If, however, the court finds that the letters of trust were issued only for the co-trusteeship of the Marital Trust, then Erlien, as sole beneficiary of the Marital Trust, had already received the full benefit of the estate property to which she was entitled under the will and, therefore, Old Republic would not be liable for any surcharge. Accordingly, we remand this matter to the trial court for resolution consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.