LOGEMANN BROTHERS COMPANY, Plaintiff-Appellant,

v.

REDLIN BROWNE, S.C., Michael J. Browne, Steven J. Syring, Ralph R. Redlin, Gregory J. Ksicinski and Norman R. Roller, Defendants-Respondents.

Court of Appeals

*No. 95–2925. Submitted on briefs August 12, 1996.—Decided October 2, 1996.*

(Also reported in 556 N.W.2d 388.)

356

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Richard E. Braun* of Milwaukee.

On behalf of the defendants-respondents Steven J. Syring, Gregory J. Ksicinski and Norman R. Roller, the cause was submitted on the brief of *Michael J. Hentzen* of *Hentzen & Styles S.C.* of Mequon.

On behalf of the defendant-respondent Michael J. Browne, the cause was submitted on the brief of *John Theiler Bode* and *Christopher A. Duesing* of *Bode, Schroeder & Carroll, S.C.* of Waukesha.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. Logemann Brothers Company believes that its former accountants, who we refer to collectively as Redlin Browne, made several errors when it completed the company's past tax returns.

However, Logemann did not discover the alleged errors until 1993 when its new accountants were conducting an audit. Although the federal and state tax authorities have not yet reviewed Logemann's returns or assessed any penalties or interest, Logemann has filed suit against Redlin Browne to recoup these possible fines and other related damages. The circuit court awarded summary judgment to Redlin Browne, reasoning that the tax authorities had to actually assess fines before Logemann could assert its malpractice claim.

While we have not identified any Wisconsin case law addressing when a party may initiate an accounting malpractice claim involving an allegedly faulty tax return, based on our review of decisions from other jurisdictions, we determine that the circuit court was essentially correct in analyzing the issue. We hold that a party asserting such an action must identify some type of official action taken by a taxing authority which indicates that the return was faulty before the party may bring the related accounting malpractice claim. We affirm the order awarding summary judgment to Redlin Browne.

Logemann retained Redlin Browne to prepare its 1990 federal and state tax returns and to file amendments to its 1989 and 1988 returns. In the following years, however, Logemann had different firms do its auditing and tax preparation work.

In 1993, one of these other firms became concerned about some of the work performed by Redlin Browne. This auditor believed that Redlin Browne had improperly valued Logemann's inventory. Most importantly, this auditor thought that the miscalculated inventory values, which were also used in the two audits subsequent to the one that Redlin

Brown did in 1990, caused Logemann's reported tax liability to be artificially low.

Thus, in April 1994, Logemann initiated this lawsuit against Redlin Browne. Logemann premised its case on the expert testimony that its current auditor would provide. Its complaint included claims of negligence and breach of contract. Logemann's itemized list of damages "estimates" the tax penalties and interest at $78,000 and the ongoing accounting fees associated with correcting the alleged error at $8400.

Redlin Browne responded by moving for summary judgment. In its motion, Redlin Browne noted that neither the state nor federal taxing authorities had imposed any penalties or interest against Logemann, nor had either of the authorities filed notice that it intended to do so. Redlin Browne argued that Logemann had not experienced any compensable damages and therefore Logemann had not met an essential element of its two claims.

The circuit court accepted Redlin Browne's argument and entered an order granting it summary judgment, although it did not dismiss the claim with prejudice. Because no taxing authority had supplied a determinative answer to whether Redlin Browne had improperly calculated Logemann's tax liability, the circuit court reasoned that Logemann's claim was not yet ripe.

[1]

Logemann now appeals the circuit court's ruling and presents this court with the question of whether this claim against its former accountants may go forward absent an indication that a taxing authority will impose a penalty, fine or some other assessment. This issue solely involves a legal question and we

therefore owe no deference to the circuit court's analysis. *See Old Republic Sur. Co. v. Erlien*, 190 Wis. 2d 400, 410, 527 N.W.2d 389, 392 (Ct. App. 1994).

We have reviewed cases from other jurisdictions which discuss when a tax-related malpractice claim accrues and initially observe that, compared to these cases, this dispute involves somewhat unique circumstances. These decisions generally involve claims that the plaintiff moved too slowly, contrary to this case where Redlin Browne is asserting that Logemann's claim is premature.[1]

For example, in *Mills v. Garlow*, 768 P.2d 554 (Wyo. 1989), the plaintiffs claimed that their attorney committed malpractice when he gave them bad advice concerning the tax treatment of a real estate transaction. While the IRS first informed the plaintiffs in March 1985 that an examining officer was questioning their tax returns and believed that more taxes were owed, the plaintiffs pursued an administrative appeal with the IRS and did not finalize the ultimate sum owed until December 1986. At that time, the plaintiffs completed an IRS Form 870, which is one of several forms that the IRS uses to close and compromise cases.[2] *Id.* at 555.

---

[1] For a collection of cases, *see* Michael J. Weber, Annotation, *Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant*, 7 A.L.R.5th 852 (1992).

[2] An IRS "closing agreement" is designed to settle issues of taxpayer liability. *See* JACOB MERTENS, JR., MERTENS LAW OF FEDERAL INCOME TAXATION § 52.01 (1996). Other forms that the IRS uses for closing agreements include Form 866 and Form 906. The IRS uses Form 656 to record "compromises" of criminal or civil litigation involving taxpayers. *See id.*

After the plaintiffs settled the IRS's claims, they filed suit against their attorney in September 1987. Although their attorney tried to defend the claim by arguing that the two-year statute of limitations started running in 1985 when the IRS first informed the plaintiffs about the possible errors, the Wyoming Supreme Court ruled that the plaintiffs did not suffer actual harm until they entered into the final settlement in 1986. *See id.* at 558.

Not surprisingly, Redlin Browne strenuously urges that we follow the reasoning of the *Mills* court. Although Redlin Browne specifically points to *International Engine Parts, Inc. v. Feddersen*, 888 P.2d 1279, 1288 (Cal. 1995), in which the California Supreme Court set out a bright-line rule that injury in tax-related malpractice claims does not accrue until the IRS actually assesses a "deficiency" pursuant to 26 U.S.C.A. § 6212 (West 1989), we observe that this California decision relied heavily on the *Mills* decision.

Logemann complains, however, that adopting such a bright-line rule is bad policy. Logemann believes that this rule will discourage taxpayers who think they have filed faulty returns from voluntarily approaching the IRS. It describes how the above reasoning would encourage taxpayers to play "Russian Roulette" and hope that the IRS never questions the return.

However, Logemann's tax expert correctly explains that the taxpayer who learns that he or she has filed an erroneous return has "an affirmative obligation to correct the mistake and pay the additional tax owed." Indeed, Logemann cites to this "affirmative obligation" as the basis for its decision to have its new accountants get to the bottom of the problem allegedly caused by Redlin Browne.

361

We acknowledge that a risk-taking taxpayer may try to skirt the law and play "Russian Roulette" with the IRS or state tax authorities.[3] But the law-abiding taxpayer who is truly interested in correcting a past tax return, like Logemann, will simply file an amended return and pay the taxes that are believed owing. As important, the IRS's review and acceptance of the amended return will provide an answer to whether the taxpayer's suspicions about his or her earlier return were correct. If the IRS accepts it, then the taxpayer will know that the old return was flawed. Thus, contrary to Logemann's claim, a taxpayer who voluntarily pays past due taxes is not prejudiced by a rule that the IRS must first assess the allegedly faulty return before the related accounting malpractice claim is permitted to go forward.

Since we can set aside these concerns about taxpayers who voluntarily approach the IRS, we believe that the reasoning of the *Mills* and *International Engine Parts* decisions is essentially correct. Still, our concerns about taxpayers who follow the course of submitting an amended return prevents us from expressly adopting the stated "conclusion" of *International Engine Parts*, that only an IRS deficiency notice is a sufficient mark of a tax-related malpractice injury. *See International Engine Parts*, 888 P.2d at 1288. In fact, the *Mills* decision recognizes that taxpayers who file an erroneous return may not always

---

[3] In the remainder of this opinion, we will refer only to the IRS and not the IRS or a state taxing authority. Nonetheless, our analysis applies equally to both. As an example, with State of Wisconsin returns, the Department of Revenue is required to notify taxpayers when it assesses back taxes and thus such notice serves as a mark when a related accounting malpractice action begins to accrue. *See* § 71.80(2), STATS.

be notified of a deficiency because the taxpayer may instead enter into a compromise agreement with the IRS. *See Mills*, 768 P.2d at 558. Hence, we adopt a middle course and hold that a tax-related malpractice claim does not accrue until the IRS files a deficiency notice, enters into a compromise agreement with the taxpayer, *or* accepts an amended return, which definitively reveals the amount of tax liability that was actually misstated on the allegedly erroneous return.

In adopting this rule we reject Logemann's further argument that because Wisconsin state courts have general jurisdiction over state and federal matters, our trial courts "have authority to interpret provisions of the Internal Revenue Code" and can therefore make a proper assessment of whether a taxpayer has filed an improper return and if he or she will owe a penalty. While our state's trial courts have jurisdiction to address tax issues, Logemann's concept would require our trial courts to make findings based on speculation, or at best "educated guesses" about the tax code and regulations. In fact, the trial court's decision would most likely be grounded on its assessment of competing expert testimony. However, justice is better served to simply permit the IRS to make the call. By following the rule we set out above, our trial courts are assured that society's *most qualified* expert in tax law will be making the definitive determination about whether the subject tax return was actually flawed.

Finally, we reject Logemann's argument that "[t]axes, penalties and related interest are not the issue in this case." Here, Logemann describes how it may never pay any back taxes because the IRS might not conduct an audit, nor (we observe) will Logemann decide to fulfill its obligation to voluntarily submit an amended return. Still, Logemann argues that it will

suffer a loss because of the expenses associated with correcting the errors that Redlin Browne allegedly made.

Nevertheless, our recognition that the IRS should be the party to make the ultimate determination about whether an accountant's practices actually resulted in an erroneous return also demands that we reject this argument. Based on the opinion of professional experts, a taxpayer, such as Logemann, may think that its books, and thus its past tax returns, are flawed. But whether corrective auditing is compensable requires a finding of a condition precedent that the original work was wrong. And the best party to decide whether this condition precedent has been fulfilled is the IRS, which in this case has not yet had the opportunity to make that determination. Because we have no evidence thus far that the IRS has any problem with Logemann's past returns, Logemann must wait.

*By the Court.*—Order affirmed.